[Civ. No. 3363.   Third Appellate District.—December 29, 1927.]

GEORGE T. MAHANA et al., Appellants, v. CORA B. ALEXANDER, Respondent.

George W. Seith and Walter W. Little for Appellants.

Fred Horowitz for Respondent.

HART, J.—The court below, on motion of defendant, struck out certain portions of the second amended complaint and sustained a demurrer to the remaining averments thereof. This is an appeal from the judgment entered upon the order sustaining the demurrer, and from an order, subsequently made, denying the motion of plaintiffs to set

aside and vacate the order and the judgment sustaining the demurrer to said complaint, on the ground that said order and said judgment were brought about through "mistake, inadvertence, surprise and excusable neglect on the part of the plaintiffs and their former attorneys of record in said cause." (Code Civ. Proc., sec. 473.)

The plaintiffs in their opening brief state the salient allegations of the complaint as follows:

"The second amended complaint alleges, as a first cause of action, that on Nov. 22, 1920, plaintiffs entered into an agreement with the Los Angeles Engineering and Manufacturing Company, a corporation, by the terms of which said company undertook and agreed to manufacture for plaintiffs certain dies, tools, jigs and electrical flashers, in a first-class, workmanlike manner; that at the same time and as a part of said agreement the said company caused to be made, executed and delivered to plaintiffs, the bond, obligation or agreement of defendant for the sum of seventeen hundred dollars ($1700), by which said defendant undertook and agreed to indemnify plaintiffs against any loss, liability or damage by reason of the failure of said manufacturing company to perform faithfully the work so contracted to be performed, or by reason of the failure of said company to manufacture said flashers in a first-class, workmanlike manner; that said company paid defendant a premium for said undertaking; that plaintiffs accepted said contract with the company and entered into the same in consideration of said undertaking. The complaint then sets out the breaches of contract upon the part of said manufacturing company, and that by reason thereof, the plaintiffs instituted an action against said company in the Superior Court of Los Angeles county for the recovery of damages because of the failure of said company to perform the contract; that plaintiffs notified defendant of said action and at the trial thereof, defendant appeared in said action and participated in the defense thereof; that thereafter, to-wit, on the 1st day of January, 1923, a judgment was duly made, entered and given in said action, being Case No. B 9474, in favor of plaintiffs and against said company, for the total sum of eighteen thousand three hundred twenty-three and 15/100 dollars ($18,323.15) damages; that thereafter plaintiffs

caused an execution to be issued on said judgment and the same has been returned wholly unsatisfied and plaintiffs have not been able to find any property of any kind or nature to satisfy said execution, and that no part of said judgment has been paid; further alleges, on information and belief, that said company, at the time of the rendition of said judgment and continuously ever since, has been insolvent, that is, has not had, at any time since judgment was rendered, any property, money or funds of any kind or nature in this state or elsewhere.

"The second cause of action is precisely the same as the first, except that it is upon another bond for a different amount, viz. ($6,000), six thousand dollars. The prayer asks for seven thousand seven hundred dollars ($7,700), on the two bonds, interest and costs."

The condition of the obligation in each of the undertakings is as follows: "Now, therefore, the condition of this obligation is such, that if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform the work contracted to be performed under said contract, and shall pay, or cause to be paid, in full the claims of all persons performing labor upon or furnishing materials to be used in such work, then this obligation shall be void; otherwise to remain in full force and effect."

Each of the undertakings purports to have been executed in pursuance of the provisions of section 1183 of the Code of Civil Procedure, which relates to the enforcement of mechanics' and laborers' liens, and, in fact, the instruments expressly so declare.

The motion to strike and the order striking from said complaint certain of its averments involved all the allegations relative to the institution of the action by the plaintiffs against the principal and the undertakings, including, therefore, the following averments: That, upon the commencement of said action, the surety on the undertakings was given notice of the institution of the action; that the surety appeared and participated in the trial of said action; that judgment was rendered and entered in favor of plaintiffs against the principal (the manufacturing company); that execution issued on said judgment and was returned

"wholly unsatisfied," and that "plaintiffs have not been able to find any property of any kind or nature to satisfy said execution, or any part thereof, and that no part of said judgment has been paid."

The plaintiffs contend that, where the principal on a surety bond has failed to perform as required by the contract as to which such bond has been given, it is necessary, as a prerequisite to the right of the party for whose benefit the bond has been given to proceed against the surety to enforce the liability he has assumed, first to prosecute to judgment an action against such principal and thereby cause to be ascertained and liquidated the damages to which the beneficiary under the undertaking may be entitled; that any judgment thus obtained against the principal then becomes and is conclusive upon the surety; hence, so the argument proceeds, the plaintiffs in this case having obtained judgment for damages against the principal (manufacturing company) for a breach of the contract, said judgment has established the liability of the surety (defendant herein), and is necessarily conclusive upon her.

The question whether the surety is conclusively bound by a judgment against the principal alone on an undertaking has occasioned much discussion in the briefs regarding the distinction between the legal status of a guarantor with respect to the obligation he owes to the guarantee and that of a surety to the party for whose benefit the surety undertaking is given. In a general legal aspect there is no ground of distinction between the two classes of undertaking. The ultimate purpose of both is to secure to a party the performance of some act or obligation which another party has agreed to perform. There are, however, certain technical attributes peculiar to each which differentiate them. The code defines a guaranty to be "a promise to answer for the debt, default, or miscarriage of another" (Civ. Code, sec. 2787), and a surety to be "one who at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor." (Civ. Code, sec. 2831.) The liability of a guarantor, as is true as to a surety (Civ. Code, sec. 2836) cannot be extended beyond the express

terms of his contract. (13 Cal. Jur., sec. 21, p. 108, and cases cited in the footnotes.) And both a guarantor and a surety are alike exonerated and their obligation discharged for the acts by the creditor specified in sections 2819 and 2840 of the Civil Code. ■ But the fundamental distinction between a contract of guaranty and that of a surety is that, while a surety's obligation is original, that of a guarantor is collateral to and independent of the contract the performance of which he guarantees. Hence, while, as above stated, a guarantor and a surety are "bound for another person," "a surety is usually bound with his principal by the same instrument, executed at the same time, and on the same consideration, and a guarantor is not." (13 Cal. Jur., sec. 5, p. 89.) Another distinction between the two kinds of contracts is that, while a surety has the right to demand that the creditor first proceed against the principal, or pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his (the surety's) burden (Civ. Code, sec. 2845), a guarantor does not have that right. (13 Cal. Jur., sec. 6, p. 90, and cases cited in the footnotes.) A surety, being, with the principal debtor, primarily liable, may, of course, be joined with the latter in an action to recover on the obligation to the performance of the terms of which the surety by his bond pledges himself. While, at common law, a guarantor could not, for obvious reasons, be joined in an action with the principal debtor, under our system he may be so joined, although such a joinder is not necessary. (13 Cal. Jur., sec. 6, p. 90, and sec. 33, p. 124.)

■ A contract of indemnity is another contractual relation which falls within the general class to which that of a guarantor and of a surety belong. It is defined by the code as "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (Civ. Code, sec. 2772.) A contract of indemnity resembles that of a suretyship in that both are original obligations. They differ, however, in that a contract of surety involves a direct promise to perform the obligation of the principal in the event that the principal fails to perform as required by his contract, while, on the other hand, a contract of indemnity obligates the indemnitor

to reimburse his indemnitee for loss suffered, or to save him harmless from liability, but never directly to perform the obligation indemnified. Moreover, while a demand is necessary in the case of a suretyship to pay or otherwise perform the obligation which the surety has agreed shall be performed before a cause of action accrues against the latter, no such demand is necessary in the case of an indemnity contract. (13 Cal. Jur., sec. 3, pp. 979, 980.) " 'The essential distinction between an indemnity contract and a contract of guaranty or suretyship,' " says the supreme court, in *Somers* v. *United States F. & G. Co.*, 191 Cal. 542, 547 [217 Pac. 746, 749], quoting from 16 Am. & Eng. Ency. of Law, 168, " 'is that the promisor in any indemnity contract undertakes to protect his promisee against loss or damage through a liability on the part of the latter to a third person, while the undertaking of a guarantor or surety is to protect the promisee against loss or damage through the failure of a third person to carry out his obligation to the promisee.' Another distinction between the two," proceeds the court in that case, "is that the promise in an indemnity contract is an original and not a collateral undertaking (22 Cyc. 80), while a contract of guaranty is a secondary and not a primary obligation and can exist only where there is some principal or substantive liability to which it is collateral. 'If,' " continues the court, quoting from 28 C. J. 887, " 'there is no primary liability on the part of the third person, either express or implied, that is, if there is no debt, default or miscarriage, present or prospective, there is nothing to guarantee, and hence there can be no contract of guaranty.' " The distinction pointed out in the first of the above excerpts from 16 Am. & Eng. Ency. of Law applies, of course, as well to a suretyship as to a contract of guaranty, but, as in many of the cases, the two terms, "guaranty" and "suretyship," seem to be synonymously or interchangeably used, and it would seem, in some instances, erroneously so. The second of the above excerpts from the same authority, however, appears plainly enough to recognize the distinction between the two obligations, as the word "surety" is excluded therefrom, while the word "guaranty" is alone therein mentioned. In this connection, though, it should be stated that in many of the

cases dealing with suretyship contracts the word "guarantee" is obviously used in its colloquial and not in its technical sense, as, for illustration, "the surety, by his contract, *guarantees,*" stating the nature of his obligation or what he has agreed to do.

Sufficiently have we now considered the several contracts mentioned to show that, while in some respects there is a correspondence between them, in others there is a vital technical distinction between them, and, therefore, the several different contractual relations must, to ascertain the respective rights of the parties to such contracts, be viewed according to rules peculiarly applicable to the nature of each.

■ It is perfectly clear that the undertakings involved herein are not contracts of indemnity. And, keeping in mind the distinction between a contract of guaranty and a suretyship as those contractual relationships are defined by our code, it becomes equally clear that said undertakings are not guaranties. As seen, a guaranty is a contract for the *direct* payment of a debt or of money (*Tyson* v. *Reinecke*, 25 Cal. App. 696, 701 [145 Pac. 153], opinion by Mr. Justice Richards, now of the supreme court), while a suretyship is a direct promise to perform the obligation of the principal in case of default in performance by the principal. It is clear that the undertakings concerned here fall within the description of a contract of suretyship as such contract is thus defined. There is no *direct* promise to pay a debt or to pay money for any purpose at all. The real and full purport of those contracts, it is plain, is that the surety will see that the primary contract will faithfully be performed by the principal, or, in case he fails to do so, the surety himself will perform it or cause it to be performed, or in the event that he likewise defaults he will pay the person for whose benefit the contract of suretyship has been executed and given for such loss as the latter may suffer from the breach of the primary contract, not, of course, to exceed the amount expressed in money to which the surety's liability is limited by his suretyship agreement. In brief, upon a breach of the principal contract the surety must perform or pay damages to the injured party for the loss or damage he has thus suffered or sustained, while the

guarantor's liability is fixed or liquidated by his contract and is enforceable the moment that the liability under the contract to which his agreement is collateral matures.

Having thus reached the conclusion that the undertakings involved herein are contracts of suretyship, as the code defines such agreements, the proposition next to be considered is, as plaintiffs contend, that the judgment obtained by them against the manufacturing company is conclusive upon the surety, the defendant herein. In the outset it is well enough to announce that we have been pointed to, or upon our own initiative found, no California case which supports that proposition. The California cases in which the subject has been presented hold contrary to the position of plaintiffs upon that proposition.

In the very early case of *Pico* v. *Webster and the Sureties on His Official Bond as Sheriff of San Joaquin County,* 14 Cal. 203 [73 Am. Dec. 647], the precise proposition presented here was submitted and decided. Pico, the plaintiff in that action, had previously brought suit and obtained judgment against Webster for the wrongful levy upon and seizure, under color of process, of certain property which Pico claimed and which it was adjudged belonged to him and not to the defendant in the action in which the levy and seizure was made. In the action against Webster and his sureties the contention was that the judgment, which had previously been secured against the sheriff alone, was conclusive upon the sureties. The proposition was not sustained. The particular ground of the decision was that the sureties by their undertaking had not bound themselves to the payment of a judgment against the sheriff as such for official misconduct whereby another party has been injured in property or person. The court, among other things, said:

"There can be no doubt that where a surety undertakes for the principal that the principal shall do a specific act, to be ascertained in a given way, as that he will pay a judgment, that the judgment is conclusive against the surety; for the obligation is express that the principal will do this thing and the judgment is conclusive of the fact and extent of the obligation. If the surety in such case stipulates without regard to notice to him of the proceedings to obtain the judgment, his liability is, of course, independent of any

such fact. . . . In the case of official bonds, the surety undertakes in general terms that the principal will perform his official duty. They do not agree to be absolutely bound by any judgment obtained against the principal for official misconduct nor to pay any such judgment. They are only held for a breach of their own obligations. It is a general principle that no party can be so held without an opportunity to be heard in defense. This right is not divested by the fact that another party has defended on the cause of action and has been unsuccessful. As the surety did not stipulate that he would be absolutely bound by the judgment against the principal or permit him to conduct the defense and be themselves responsible for the result of it, the fact that the principal has unsuccessfully defended has no effect on their rights. They have a right to contest with the plaintiff the question of their liability; for to hold that they are precluded from this contestation by the suit against the sheriff is to hold that they undertook for him that they would be responsible for any judgment against him which might be rendered by accident, negligence or error instead of merely stipulating that they would be responsible for his official conduct.''

It was further said in that case:

''Nor is there anything in the point that these defendants had notice. *They must have had legal notice, which we have held to be that required by statute or make voluntary appearance as parties to the record.* According to common law rules, a plaintiff cannot bring in parties not sued in an action of trespass by mere notice when there is no pretense that they were trespassers.'' (Italics ours.)

*Easton* v. *Boston Investment Co.*, 51 Cal. App. 246, 250 [196 Pac. 796], follows the rule as it is stated in *Pico* v. *Webster,* and which is also approved in *Irwin* v. *Backus,* 25 Cal. 214, 223 [85 Am. Dec. 125]. It has been said that an ''exception to the rule'' is to be found in those cases, for instance, where the sureties are parties to an injunction bond and ''assume such connection with the suit that they are concluded by a judgment in a suit upon the bond,'' or ''where the sureties have become parties to a bond for the redelivery of property, or the release of attached property,'' or where the sureties are on ''a bond of an executor or ad-

ministrator or guardian," or have "undertaken to perform a decree or judgment," in all of which cases a judgment against the principal alone is binding upon the sureties, unless they can show that it was obtained by fraud or collusion. (*Easton* v. *Boston Investment Co., supra; Irwin* v. *Backus, supra;* Freeman on Judgments, 4th ed., sec. 180; 32 Cyc. 136.) The present case does not fall within any of the exceptions mentioned.

The rule above stated accords with the evident view of the legislature upon the subject of the conclusiveness of judgments obtained in actions against a party upon another connected with contracts in which such judgments are obtained, but not directly connected with the actions in which the judgments have been secured. While there are a number of sections of the Code of Civil Procedure which deal with that subject, there is to be found no provision therein which establishes the rule that a judgment obtained in an action on a contract supported by an agreement of suretyship against the contractor for a breach of the original contract is binding or conclusive upon the surety. The sections referred to are 1055 and 1908 to 1912, inclusive, of the Code of Civil Procedure. The only one of said sections relating to a suretyship is section 1912, which reads:

"Whenever, pursuant to the last four sections, a party is bound by a record, and such party stands in the relation of a surety for another, the latter is also bound from the time that he has notice of the action or proceeding, and an opportunity at the surety's request to join in the defense."

It will at once be perceived that the foregoing section points the way in which the principal on a suretyship contract may be bound by a judgment against the surety, but says nothing about binding the surety where the principal has alone been sued on the contract for the faithful performance of which the surety has executed and given his bond. This situation as to a surety is, however, to be accounted for by the very nature or intrinsic characteristics of a suretyship undertaking. The surety is bound only by the terms of his contract. As some of the cases put it, he is entitled to stand on the letter of his undertaking. The contract, the faithful performance of which he undertakes, becomes, upon the execution and the giving of his under-

taking, a part of the latter, and if by any act of the creditor the terms of the original contract are altered or modified or changed without his consent, or the remedies or rights of the creditor against the principal "in respect thereto" are in any way impaired or suspended, or his (the surety's) security is lessened by any act of the creditor, he is discharged from the obligations of his undertaking. He is, therefore, entitled to his day in court and to contest any attempt to fasten upon him an obligation he did not assume. The present case well illustrates the fallacy of the proposition that a surety on a suretyship bond may be bound by a judgment obtained in an action for a breach of the original contract against the principal alone, where the surety himself is not a party to the record in such action. The surety here did not, by her undertaking, agree to pay or become liable for any judgment which might be obtained against the principal. There is no express provision in the undertaking to that effect, nor does the instrument contain any language which may rationally be so construed as to justify importing into it any such provision or agreement or liability.

As has been stated, and as is obviously true, a contract of suretyship is an original obligation; and the obligation is joint and several, and, upon the accrual of a right of action on the undertaking, which occurs synchronously with the breach of the original contract, the plaintiffs could have sued either the principal or the surety, or both, to enforce the liability created by the undertaking and have obtained a joint or several, or a joint and several, judgment against both, assuming, of course, that there was not available to the defendant a defense which would vitiate or destroy any right under the undertaking which the plaintiffs might originally have been entitled to assert.

It follows from the views above expressed that the trial court made no error in striking from the complaint the matters referred to. Special notice, however, should be given the deleted averments. It is to be noted that said complaint does not disclose the nature or character of the notification to the defendant of the commencement and pendency of the action against the manufacturing company— whether it was a mere written notice prepared and given

by the plaintiffs upon their own initiative, or a verbal notice likewise given, or the regular process required to be issued and served to bring a party against whom an action has been instituted into the action or his person under and subject to the jurisdiction of the court in a civil action. Indeed, it is not thus shown that the defendant here was such a party defendant or otherwise a party to the record in the action against the original contractor. The portions of the complaint stricken out, after alleging that an action had been commenced by the plaintiffs against the manufacturing company, and further alleging that a judgment was obtained therein against said company, merely stated that the defendant surety was "notified" by the plaintiffs of the commencement of said action, "and at the trial thereof this defendant appeared in said action and participated in the defense thereof." That averment hardly goes further than to state that an action had been brought against the manufacturing company on the primary contract, that the defendant had in some way been notified of that fact, and that she appeared at the trial and assisted the company in presenting its defense. A mere general statement that a party "participated" in the trial of an action can convey no definite information as to the particular nature or character of such "participation." At any rate, the portions of the complaint stricken out did not show that the defendant was a party to the record in the action against the manufacturing company. And it is worthy of remark that, if, in fact, she was a party to the record in that action, the complaint fails to divulge what disposition the trial court made of her case—whether it was summarily dismissed or upon a trial on the merits judgment rendered and entered for or against her. We will not review the cases relied upon by the plaintiffs upon the proposition that it is requisite to proceed against the principal before action may be taken against the surety on a suretyship bond to establish the extent of the loss and the precise liability of the latter. In some of the cases language is used which, upon first blush or without a somewhat critical examination of the facts, may seem to lend support to the proposition. But it is not thought that there was an intention in any of those cases to lay down the rule which counsel seek to invoke and

apply herein. In fact, as pointed out above and as we think is obviously true, such a rule would be wholly inconsistent with the nature of the obligation involved in a contract of suretyship or with its intrinsic legal attributes. It is true, as before declared, that a cause of action accrues against the sureties the instant that the original contract is breached, but this cannot mean that the surety is to be deprived of his right to contest the enforcement of his liability upon any legal ground which he is entitled to invoke. If so, then the rule that he may stand upon the precise terms of his undertaking, and that his liability cannot be extended beyond the exact terms thereof, would, in many cases, be practically meaningless. (See, in addition to the authorities above cited, 23 Cal. Jur., p. 1062.)

■ The order sustaining the demurrer to the second amended complaint was proper. The averments remaining after the order striking out was made stated no cause of action against the defendant.

We now reach the question whether the trial court abused its discretion in denying the motion of plaintiffs to set aside and vacate the order sustaining the demurrer to the second amended complaint without leave to amend and the judgment thereupon entered.

The judgment, after stating that the portions of the complaint referred to above were stricken from both counts and that the demurrer to the remaining portions of that pleading was sustained, recites:

"Counsel for plaintiffs thereupon and in open court announced that plaintiffs did not desire leave to file an amended complaint and would not file an amended complaint, whereupon the court sustained defendant's general demurrer to said second amended complaint without leave to amend and ordered that judgment for defendant be given by reason thereof."

The motion was made in pursuance of the provisions of section 473 of the Code of Civil Procedure, and upon the specific ground that the order sustaining the demurrer without leave to amend was "taken against" the plaintiffs "through his inadvertence and mistake." The motion was supported by "the papers and files in this action" and

an affidavit of merits by one of the plaintiffs. The salient averments of the affidavit are:

"That at the time said court sustained the demurrer to plaintiffs' second amended complaint the former counsel for plaintiffs announced in open court that plaintiffs did not desire to file an amended complaint, whereupon the court, as affiant is informed and believes, solely by reason of said announcement, sustained said demurrer to said second amended complaint without leave to amend and ordered that judgment be entered for defendant. That, as affiant is informed and believes, his said former counsel were of the opinion that but one ground to recover was available to plaintiffs in the above-entitled action, viz.: that the action on the bond was based solely upon a contract of indemnity for liability, and that said counsel were of the opinion that under the ruling of the court in striking out certain portions of said second amended complaint and sustaining a general demurrer to the balance of said complaint, the plaintiffs would be unable to amend their complaint so as to state a cause of action in any other way and protect their interests, and said counsel therefore stated to the court that they did not wish to amend said complaint. That the refusal to file an amended complaint was made through the mistake and inadvertence of said former counsel and without the knowledge of said plaintiffs or any of them."

The affidavit further states that "plaintiffs are advised by their present counsel of record that they have a good and meritorious cause of action against said defendant and that said complaint can be amended to contain facts sufficient to constitute a cause of action against said defendant, which will more fully appear in the proposed third amended complaint, which is hereto attached and which is filed herewith."

The proposed third amended complaint seems to state a good cause of action against the defendant. The respondent, however, as one of the grounds upon which she resists a reversal of the order now under consideration, contends that the bond or undertaking is void for the following reasons: That it purports to be the bond authorized by section 1183 of the Code of Civil Procedure, relating to mechanics'

liens; that said section does not have reference to or contemplate contracts of the nature of the one in question here, albeit the parties believed that it did and therefore so phrased the undertaking as to bring under its protection mechanics and laborers performing labor upon and materialmen furnishing materials for use and used in the manufacture of the articles. But it is not necessary to investigate that question here. Conceding that the undertaking is valid as a common-law bond (and we do not intend to intimate that it is not, or that it falls within the ruling in *Miles* v. *Bailey*, 170 Cal. 151 [149 Pac. 45]), the real question which is presented to us on the appeal from the order denying the motion to vacate the judgment is whether, in denying that motion, the trial court transcended the bounds of a sound judicial discretion.

It has with no infrequency been decided that a judgment by default may be vacated and set aside on the ground that such judgment was brought about and entered through a mistake in law on the part of the moving party through the erroneous advice given to the former by his attorney. (See 14 Cal. Jur., sec. 99, p. 1044, and cases named in the footnotes.) Of course, in such cases whether the court has abused its discretion in making the order is a question which must be determined by the light of the circumstances peculiar to each case. Among the cases which it is claimed present a situation analogous to the instant case, as to the matter of the facts and in which relief under section 473 of the Code of Civil Procedure was applied for on the ground of mistake of law on the part of the party seeking such relief or his attorney, are the following: *Douglass* v. *Todd*, 96 Cal. 655 [31 Am. St. Rep. 247, 31 Pac. 623]; *O'Brien* v. *Leach*, 139 Cal. 220 [96 Am. St. Rep. 105, 72 Pac. 1004]; *Waite* v. *Southern Pac. Co.*, 192 Cal. 467 [221 Pac. 204]. The cases of *Douglass* v. *Todd* and *O'Brien* v. *Leach* were appeals from orders granting motions to set aside the defaults and vacating the judgments. In the first named of those cases the specific ground upon which the default and the judgment were vacated was that the defendant, upon being served with summons, consulted an attorney at law and stated his case to said attorney, who erroneously advised him that he (defendant) had no defense

and, believing and relying upon said advice, he filed no answer to the complaint. In the last-named case the defendant, residing in Alameda County, was served with summons in the city and county of San Francisco. He consulted and retained an attorney to represent him in the case without informing him as to the county in which the service was made, there being nothing on or in the papers which he delivered to the attorney indicating the place of service. "From the circumstances under which he received the papers, the attorney naturally supposed that the service was made at the place of residence of the defendant, and, therefore, that thirty days would be allowed in which to appear. It was an inadvertence (continued the court) which might occur, even to a reasonably careful man. It was discovered on the day on which the default was taken, and measures to obtain an extension of time, and to vacate the default, were promptly taken and diligently prosecuted." The court also made the following significant observations:

"In matters of this sort the proper decision of the case rests almost entirely in the discretion of the court below, and this court will rarely interfere, and never unless it clearly appears that there has been a plain abuse of discretion. *This court will usually sustain the action of the court below upon the same facts, whether that decision is for or against the motion;* but it is much more disposed to affirm an order when the result is to compel a trial upon the merits than it is when the judgment by default is allowed to stand, and it appears that a substantial defense could be made. *This will explain what would otherwise seem to be a conflict in the decisions."* (Italics ours.)

In *Waite* v. *Southern Pac. Co.*, the action was for damages for the loss of a quantity of goods delivered to defendant, a common carrier in interstate commerce, to be transported from Portland, Oregon, to Los Angeles, California. The complaint was filed in the superior court of Los Angeles County on January 19, 1921. On January 31, 1921, defendant filed a demurrer to the complaint, and at the same time filed a petition for the removal of the cause to the United States district court, on the ground that the action was founded upon a federal law. On February 15, 1921, the demurrer was overruled and the petition for

removal denied, the defendant being given ten days within which to file an answer. On the 2d of March, 1921, the defendant filed in the federal court a transcript of the record and a petition for removal of the cause to said court and, while the cause was still pending in that court, the petition for removal not then being disposed of and no answer to the complaint being filed in the state court, the plaintiffs, on March 26, 1921, caused a default to be entered against the defendant for failure to file such answer, and judgment was entered thereon on April 14, 1921. The defendant, in the meantime, filed its answer in the federal court and, on April 11, 1921, the plaintiffs filed a motion to remand the cause to the state court. Said motion was submitted for decision on April 18, 1921, and was granted on August 6, 1921. On September 12, 1921, the defendant filed in the state court a notice of motion to set aside and vacate the judgment taken by default, said motion being denied on September 19, 1921. Defendant appealed from the order denying said motion, and the same was reversed. The court, among other things, said:

"It must be conceded that while the determination by both the federal and state courts was in favor of the jurisdiction of the latter, the defendant was not without plausible grounds for its contention, and the fact that the United States District Court retained the case under advisement for many months would seem to be sufficient indication that the question of law involved was in doubt and was one upon which an attorney might very well be mistaken. In any event, if it be conceded that the defendant's mistake of law was a reasonable one under the facts set forth in the complaint, we believe that its neglect to file an answer because of such belief is at least excusable."

It is clear that the mistake of law for which the defendant was excused in that case occurred under circumstances which strongly called for the relief asked for. There was plausible ground for an honest belief on the part of the defendant that the appropriate forum in which to try the cause was the federal court for the reason that the action grew out of interstate carriage of freight, which is regulated by rules established by Congress and the interstate commerce commission, and it is, therefore, quite apparent that,

acting under that belief, the defendant seriously felt that it was safe in awaiting the decision of the federal court upon the motion of plaintiff to remand the cause to the state court before filing an answer, which, however, it did do in the federal court while the motion to remand was still pending.

The case before us is entirely different in the facts and circumstances from those just considered. In the first place, it may be repeated that two of those cases involved appeals from orders granting motions to set aside defaults, in one of which (*O'Brien* v. *Leach*) the court, as seen, declared: *"This court will usually sustain the action of the court below upon the same facts, whether that decision is for or against the motion,"* and that the inclination of appellate courts to affirm rather than reverse an order granting such relief, where it is made to appear that a substantial defense could be made, "will explain what would otherwise seem to be a conflict in the decisions." In the second place, it is to be observed that relief upon the ground of a mistake of law on the part of the moving party will be granted in cases only of peculiar or exceptional circumstances—cases of which *Waite* v. *Southern Pacific Co., supra,* may be said to be typical. In the instant case, the whole groundwork of the proceeding and motion to set aside the default was that the attorney originally representing the plaintiffs was incapable of drafting a complaint which would state a cause of action against the defendant because of his alleged inability to grasp and understand the real nature of the obligation assumed by defendant by virtue of her undertaking. That attorney, after a demurrer to the complaint originally filed was sustained, was given by the court, on two different occasions, leave to try his hand at preparing a complaint that might state a cause of action against the defendant, but failed in both those attempts, the last time (the second amended complaint) counsel stating that plaintiffs did not desire to file a third amended complaint and that they would not do so. It was proper for the trial court to assume from the statement of the attorney that the plaintiffs, speaking through the former, had concluded to abandon any attempt further to proceed against the defendant on her undertaking. The plaintiffs, although, as may be assumed,

laymen and unfamiliar with the rules of pleading or without a correct understanding of the legal nature of various contractual obligations which may be created or arise between men in the usual course of business, yet were, presumably, of sufficient intelligence to perceive, after the original and the first amended complaint had yielded to the force of a demurrer, that their attorney, having failed in two attempts to prepare a sufficient complaint, was incapable, if such was the fact, of drafting a complaint that would stand against a demurrer or other assault which appropriately, in a technical sense, might be made against it, and, so perceiving, should then have retained another lawyer to prepare the second amended complaint not subject to the objection that it was bad for want of sufficient facts. But, regardless of these considerations, we think the trial court was more than liberal in the exercise of its discretion favorably to the plaintiffs, to the end that they might in a proper way get into court with their grievance against defendant. Besides, there must be a line drawn somewhere in matters of this kind, so that what would often amount, even in meritorious cases, to mere trifling with the courts may be prevented. If a litigant may in any case at any time escape the consequences of his attorney's ignorance of the law of his case, there would be no end to the trouble and inconvenience to which the trial courts would be put in such instances. We cannot doubt, however, that, under the circumstances existent here, the trial court was not guilty of an abuse of discretion in denying the application of plaintiffs to set aside the default judgment entered herein. The case here clearly comes within the case of *Porter* v. *Anderson,* 14 Cal. App. 716 [113 Pac. 345]. In that case, as here, the plaintiff's attorney failed to state a cause of action for the relief sought. The opinion states fully the circumstances under which the question arose in that case. They need not be repeated here; but what is said therein as follows is forcefully pertinent to the situation in the case at bar:

"He merely had an erroneous view of the requisites of a sufficient complaint in this kind of action and the last ruling of the court upon that question was a disappointment rather than the 'surprise' contemplated by the section. (Citing many cases.) Lawyers are constantly receiving the

'surprise' that counsel complain of here. As well could it be maintained that every ruling of the court upon a question of evidence during the progress of a trial contrary to counsel's notion of the law of evidence, which admitted testimony that they had not prepared themselves to meet or overcome, would constitute the 'surprise,' which, under section 657 of the Code of Civil Procedure, may be made the basis of a motion for a new trial. . . . The 'surprise' from the effect of which it is within the power of the courts under our code sections, upon a satisfactory showing, to relieve a party, is defined to be 'some condition or situation in which a party to a cause is unexpectedly placed, to his injury, without any default or negligence of his own (citing many cases), which ordinary prudence could not have guarded against.' "

It is well to state that a petition to the supreme court for a hearing of *Porter* v. *Anderson* was denied.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.