[No. A041581. First Dist., Div. Three. Feb. 27, 1989.]

ALL BAY MILL & LUMBER CO., INC., Plaintiff and Appellant,
v.
SURETY COMPANY OF THE PACIFIC, Defendant and
Respondent.

**COUNSEL**

Daniel A. Gamer and Glenn D. Kabanuck for Plaintiff and Appellant.

Geoffrey R. Hudson for Defendant and Respondent.

## OPINION

**WHITE, P. J.**—All Bay Mill & Lumber Co., Inc. (All Bay), appeals after the trial court entered judgment in favor of the defendant, Surety Company of the Pacific (Surety), on All Bay's complaint to recover on a contractor's license bond. We affirm.

### FACTS

This action concerns All Bay's efforts to collect on a $5,000 contractor's license bond issued by Surety to John Mendonca Construction (Mendonca) after Mendonca failed to pay for building supplies provided by All Bay. In order to recover on the contractor's bond, All Bay was required to establish that it was damaged as the result of Mendonca's willful and deliberate violation of the Contractors License Law. (Bus. & Prof. Code, § 7000 et seq.)[1] All Bay waived a jury, and after a brief trial, the court found in favor of Surety.

The evidence shows that All Bay sold lumber and related construction materials to Mendonca to be used in constructing the Ladera Vista Condominium Project in Novato. Mendonca was the general contractor on the project, as well as a general partner in the limited partnership which was developing the property. Although Mendonca made regular payments on its account with All Bay for nearly 14 months, Mendonca failed to pay for materials purchased in April and May of 1985; Mendonca subsequently filed for bankruptcy on August 19, 1986. At the time of trial, Mendonca owed All Bay a principal balance of $4,020.[2]

Construction loan funds for the Ladera Vista Condominium Project were disbursed by Builders Control Service pursuant to a control agreement. Under this agreement, the lender paid construction funds to Builders Control Service which then disbursed the funds to Mendonca or to the subcontractors and suppliers directly. The computer printout status report for the Ladera Vista account shows that Builders Control Service paid $6,380 to Mendonca on May 3, 1985, to be applied towards lumber, plywood, and siding.

The parties stipulated that Surety had issued a $5,000 contractor's license bond to Mendonca which was in full force and effect at the time Mendonca purchased the materials from All Bay.

---

[1] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

[2] Mendonca owed $18,524 for materials supplied by All Bay and had a $1,504 credit for returned materials. All Bay settled separately with the lender on the project and received $13,000 to be applied towards the amount owed by Mendonca. Thus, the principal balance owing at the time of trial was $4,020.

*Discussion*

■ A surety's liability under a contractor's license bond is established by statute, and no burden may be imposed on the surety other than those specifically set forth by statute. (*Brown* v. *Surety Co. of Pacific* (1981) 122 Cal.App.3d 614, 620 [176 Cal.Rptr. 143].) ■ All Bay claims Surety is liable for Mendonca's default under sections 7071.5, subdivision (b), 7108, and 7120. We disagree.

Section 7071.5, subdivision (b) provides that a contractor's bond is for the benefit of "[a]ny person damaged as the result of a willful and deliberate violation of [the Contractors License Law]" committed by a licensed contractor. All Bay contends Mendonca violated two separate provisions of the Contractors License Law. All Bay first contends that Mendonca violated section 7108, which provides that "[d]iversion of funds or property received for prosecution or completion of a specific construction project or operation, or for a specified purpose in the prosecution or completion of any construction project or operation, or failure substantially to account for the application or use of such funds or property on the construction project or operation for which such funds or property were received constitutes a cause for disciplinary action."

In addition, All Bay contends Mendonca violated section 7120, which provides that "[w]ilful or deliberate failure by any licensee or agent or officer thereof to pay any moneys, when due for any materials or services rendered in connection with his operations as a contractor, when he has the capacity to pay or when he has received sufficient funds therefor as payment for the particular construction work, project, or operation for which the services or materials were rendered or purchased constitutes a cause for disciplinary action . . . ."

The trial court found that All Bay had failed to establish a violation of either section of the Contractors License Law. First, the court found that All Bay had failed to show a "willful or fraudulent" diversion or nonpayment of funds. ■ Secondly, the court found that although Mendonca had failed to provide an "accounting," this did not provide a basis for recovery on the contractor's bond.

A. *The Court's Finding That There Was No Willful or Fraudulent Diversion or Nonpayment of Funds.*

All Bay first contends that the uncontroverted evidence unequivocally establishes Mendonca willfully diverted construction funds and willfully failed to pay All Bay for materials and that, consequently, the trial court's finding to the contrary is not supported by substantial evidence. We disagree. ■ When a verdict is attacked as being unsupported, the power of

the reviewing court begins and ends with a determination whether there is any substantial evidence which will support the conclusion reached by the trier of fact. "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) Here, the evidence shows that Mendonca failed to pay $4,020 for lumber and other construction material received in April and May of 1985, that it received a disbursement of $6,380 on May 3, 1985, to be applied towards lumber, plywood and siding, and that Mendonca subsequently declared bankruptcy in August of 1986. In our view, the trial court could reasonably conclude on the basis of this evidence that All Bay had failed to show Mendonca had willfully diverted funds. In the context of this case, section 7108 required that All Bay prove Mendonca had diverted "funds . . . received for . . . a *specified purpose* in the prosecution or completion of any construction project or operation . . . ." Here, the evidence does not establish that Mendonca received funds for the *express* purpose of paying for the material received from All Bay in April and May of 1985. Although All Bay received a disbursement in May of 1985 to be applied towards lumber, siding, and plywood, this disbursement could have been properly used to pay Mendonca's other suppliers or to pay for materials purchased from All Bay in previous months.

All Bay also failed to conclusively establish that Mendonca willfully or deliberately failed to pay for materials when he had the capacity to pay or had received sufficient funds therefore as payment for the particular construction work. (§ 7120.) The evidence is clearly susceptible to the interpretation that Mendonca lacked the capacity to pay for the materials (Mendonca declared bankruptcy 15 months later) and does not conclusively establish that Mendonca had received sufficient funds as payment for the particular construction work. Since the evidence is susceptible to this interpretation, we are bound by the trial court's determination of this factual issue. (*Crawford* v. *Southern Pacific Co., supra,* 3 Cal.2d at p. 429; see also *Nelson Supply Co.* v. *Surety Co. of Pacific* (1984) 161 Cal.App.3d 490, 492 [207 Cal.Rptr. 469].)

B. *The Court's Finding That Mendonca Had Failed to Account.*

 Section 7108 provides that a "failure substantially to account for the application" of funds received for the prosecution or completion of a specific construction project or operation, or for a specified purpose in the construction project, is cause for disciplinary action. As indicated, the trial court found that Mendonca had "failed to provide an accounting" but that this did not permit All Bay to collect on the contractor's bond. The trial court did not explain its reasoning, but we believe its conclusion is supportable under the law.

■ A contractor's bond is for the benefit of persons *damaged* as a result of a contractor's violation of the Contractors License Law. (§ 7071.5, subd. (b).) Consequently, not every technical violation of the Contractors License Law will give rise to a right to collect under the bond. ■ In the present case, the trial court could reasonably conclude that All Bay failed to prove it was *damaged* by Mendonca's failure to account, and consequently was not entitled to collect under the bond. Clearly, had All Bay shown a willful diversion or failure to pay funds the damage to All Bay would have been established. This is not so with respect to the failure to account. Any connection between Mendonca's failure to account and the resulting damage to All Bay is speculative at best. In our view, as the trier of fact the trial court could reasonably conclude that All Bay failed to establish a link between Mendonca's failure to account and resulting damage. Consequently, the trial court did not err.

## C. *Mendonca's Default.*

All Bay's complaint alleged causes of action against Surety and Mendonca. In its second cause of action, All Bay alleged that Mendonca had willfully and deliberately failed to furnish an accounting, diverted funds and failed to pay for materials in violation of sections 7108 and 7120; on the basis of this cause of action All Bay sought an accounting from Mendonca as well as monetary damages. Mendonca did not answer the complaint and the court entered a default judgment against Mendonca.

■ All Bay contends the default judgment against Mendonca is binding on Surety to the extent it admits that Mendonca violated sections 7108 and 7120. We disagree.

■ It is well established that a judgment against a principal is not binding in a separate action against a surety. (*Mahana* v. *Alexander* (1927) 88 Cal.App. 111, 119-122 [263 P. 260]; *Kane* v. *Mendenhall* (1936) 5 Cal.2d 749, 751 [56 P.2d 498]; *Jew* v. *Pacific Employers Ins. Co.* (1961) 196 Cal.App.2d 310, 316 [16 Cal.Rptr. 542].) ■ Nevertheless, All Bay claims this rule is not applicable in the present case because here, unlike in the cases just cited, the principal and surety were sued in the same action. In our view, this is a distinction without a difference.

■ In concluding that a judgment against a principal is not binding on a surety, the *Mahana* court quoted the following passage from an earlier Supreme Court case: " 'In the case of official bonds, the surety undertakes in general terms that the principal will perform his official duty. They do not agree to be absolutely bound by any judgment obtained against the principal for official misconduct nor to pay any such judgment. They are only held for a breach of their own obligations. It is a general principle that no party

can be so held without an opportunity to be heard in defense. This right is not divested by the fact that another party has defended on the cause of action and has been unsuccessful. As the surety did not stipulate that he would be absolutely bound by the judgment against the principal or permit him to conduct the defense and be themselves responsible for the result of it, the fact that the principal has unsuccessfully defended has no effect on their rights.'" (*Mahana* v. *Alexander, supra,* 88 Cal.App. at p. 120, quoting *Pico* v. *Webster* (1859) 14 Cal. 202.)

■ Similarly, the surety on a contractor's bond undertakes in general terms that the principal will not violate the provisions of the Contractors License Law. (§ 7071.5, subds. (a) and (b).) They do not agree to be absolutely bound by a judgment obtained against the principal for a violation of the Contractors License Law. (See §§ 7071.5-7071.15.) In our view, it is irrelevant whether the judgment was obtained in a previous action or by default in the same action brought against the surety. ■■■■ ■ In both cases, the surety must be given an opportunity to be heard in defense.[3]

■ Finally, All Bay suggests that the judgment against Mendonca was admissible as *evidence* (without res judicata or binding effect) that Mendonca had violated sections 7108 and 7120. (Evid. Code, §§ 1224, 1302.) We may concede this point since All Bay never offered the default judgment as mere *evidence* that Mendonca had violated sections 7108 and 7120. Instead, All Bay contended that the judgment had a binding res judicata effect. Since the judgment against Mendonca was never tendered to the trial court as mere evidence, it was not required to consider it as such.

The judgment is affirmed.

Merrill, J., and Strankman, J., concurred.

---

[3] Moreover, the default judgment against Mendonca did not collaterally estop Surety from separately litigating whether Mendonca violated sections 7108 and 7120. Collateral estoppel bars a party from relitigating an issue only where there are two separate lawsuits between the same parties and the factual issue has been determined in the first lawsuit. (*Frommhagen* v. *Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299, 1301 [243 Cal.Rptr. 390].) Here, there was only one lawsuit; in that suit the issue was determined adversely to one defendant (Mendonca) due solely to a default, while the other party (Surety) litigated and prevailed on the issue. Collateral estoppel does not apply in this situation.