Filed 8/21/15  Vigil v. Wesco Ins. Co. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JUAN C. VIGIL et al., | D066712 |
| Cross-Complainants and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00058529-CU-BC-NC) |
| WESCO INSURANCE COMPANY, | |
| Cross-Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

The Nguyen Law Group and Thanh Kim Nguyen for Cross-complainants and Appellants.

Hausman & Sosa, Carlos E. Sosa, Larry D. Stratton, and Anthony A. Zepeda for Cross-defendant and Respondent.

# I.

## INTRODUCTION

Cross-complainants Juan C. Vigil and Belinda L. Vigil appeal from a judgment in favor of cross-defendant Wesco Insurance Company (Wesco), entered after the trial court sustained Wesco's demurrer to the Vigils' cross-complaint without leave to amend. Wesco, a construction license surety, issued a bond to a construction company with which the Vigils were engaged in a dispute. The trial court concluded that the allegations in the Vigils' cross-complaint failed to state a cause of action against Wesco, because the alleged default of Wesco's principal occurred prior to Wesco's issuance of the bond. On appeal, the Vigils contend that the trial court abused its discretion in failing to grant them leave to amend with respect to Wesco. The Vigils assert that they could amend their cross-complaint in two different ways in order to state a viable claim against Wesco. We affirm the trial court's judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the Vigils' cross-complaint, they entered into a contract with Houle Construction, Inc. (Houle) in December 2011 for construction services at the Vigils'

home.[1]  The contract for services obligated the Vigils to pay $83,377.70.  Houle began work on the project in December 2011.

The cross-complaint suggests that between December 2011 and March 31, 2012, Houle worked on the Vigil property.  On March 31, Houle's contractor's license was suspended for failing to secure and register a contractor's bond.  According to the cross-complaint, despite the fact that Houle's contractor's license was suspended, Houle continued to work on the Vigil property "through the time final payment was due on July 5, 2012."

According to the complaint, on August 17, 2012, Houle filed a mechanic's lien against the Vigil property to recover unpaid fees and costs.  At that time, Houle was still unlicensed.  Houle secured a contractor's license bond from Wesco on August 29, 2012.  Upon the issuance of Wesco's bond, Houle's contractor's license became active again.  This bond was in effect between August 29, 2012, and September 29, 2013.

In late December 2012, the Vigils filed a cross-complaint against Houle and a number of other individuals and entities, including multiple "Roe" cross-defendants.  The cross-complaint alleged four causes of action, including a claim on the "Contractor's License Bond."  Underlying this cause of action was the Vigils' contention that Houle had performed unlicensed work and had completed that work in an "unworkmanlike manner."

---

[1]     Because we are reviewing the trial court's ruling on a demurrer to a cross-complaint, our recitation of the factual background of this matter is derived from the allegations set forth in that pleading.

The parties agree that at some point the Vigils named Wesco as one of the original "Roe" cross-defendants.[2]

Wesco demurred to the cross-complaint on the ground that all of Houle's alleged acts occurred outside of the period during which Wesco's bond was in effect. The trial court sustained Wesco's demurrer, without leave to amend, and entered judgment in favor of Wesco. The Vigils filed a timely notice of appeal.[3]

## III.

## DISCUSSION

### A.   *Legal standards on review of the sustaining of a demurrer*

This court applies the following well-established law in reviewing a trial court's order sustaining a demurrer without leave to amend: " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial

---

[2]    The record does not include reflect when the Vigils identified and named Wesco as a cross-defendant.

[3]    The Vigils did not submit a reply brief.

4

court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.    *Analysis*

The Vigils appear to acknowledge that the cross-complaint, as drafted, fails to state a cause of action against Wesco. They contend, however, that the trial court did not give them a " 'fair opportunity' " to cure the defects of the complaint.

The Vigils attempt to demonstrate that they could amend their complaint to state a viable cause of action against Wesco by asserting a cause of action for Houle's default based on Houle's *failure to repair* the alleged defects during the period the bond was in effect.

Although the Vigils did not include a copy of the bond in the record on appeal, it appears to be undisputed that the bond in question was issued pursuant to section 7071.5 of the Business and Professions Code[4]. That section provides, in relevant part, that "[t]he contractor's bond shall be for the benefit of the following: [¶] (a) A homeowner contracting for home improvement upon the homeowner's personal family residence damaged as a result of a violation of this chapter by the licensee." (*Ibid*.)

A surety's liability under a contractor's license bond is established by statute, and no burden may be imposed on the surety other than those specifically set forth by statute.

---

[4]    Further statutory references are to the Business & Professions Code unless otherwise indicated.

(*Brown v. Surety Co. of Pacific* (1981) 122 Cal.App.3d 614, 620.)  Further, the violation giving rise to a contractor's liability must constitute a basis for discipline under the Contractors State License Law.  (*Nelson Supply Co. v. Surety Co. of Pacific* (1984) 161 Cal.App.3d 490, 492 [surety's obligations arise only if contractor violated the Contractors License Law provisions].)

A surety's liability is commensurate with that of its principal, pursuant to the Civil Code.  (Civ. Code, § 2808 ["Where one assumes liability as surety upon a conditional obligation, his liability is commensurate with that of the principal"].)  The bond is to serve as "security for the covenants of the underlying contract."  (*T&R Painting Construction, Inc. v. St. Paul Fire & Marine Ins. Co.* (1994) 23 Cal.App.4th 738, 744.) A surety has no liability for the acts or omissions of the licensee that occur prior to the posting of a bond.  (*Morton Regent Enterprises, Inc. v. Leadtec California, Inc*. (1977) 74 Cal.App.3d 842, 846.)

The Vigils assert on appeal that Houle may have committed acts or omissions during the period in which the bond was in effect, for which Houle, and thus Wesco, could be liable.  Specifically, the Vigils contend that if permitted to amend, they could allege that Houle violated section 7113 when it " 'failed to take appropriate corrective action' " to repair defects on the Vigils' property upon being requested to do so sometime after March 2013.

Section 7113 provides: "Failure in a material respect on the part of a licensee to complete any construction project or operation for the price stated in the contract for such

6

construction project or operation or in any modification of such contract constitutes a cause for disciplinary action."  Although section 7113 does not specifically identify the *failure to repair* as ground for disciplinary action, the court in *Michelson Concrete Co. v. Contractors' State License Bd*. (1979) 95 Cal.App.3d 631 concluded that evidence that the contractor agreed to construct a slab for a specified price, provided work that was unacceptable and did not meet trade standards, and "failed to take appropriate corrective action after being repeatedly requested to do so," (*ibid*.) constituted substantial evidence to support the trial court's finding that the contractor had violated section 7113.

Because a violation of section 7113 may provide a basis for liability for a surety pursuant to section 7071.5, subdivision (a), the Vigils contend that Wesco may be held liable under the bond if the Vigils are permitted to amend to allege that Houle "default[ed] in [its] obligations to Appellants to make repairs . . . during the Respondent's bonding period."

We conclude that even if the Vigils were to amend their cross-complaint in this manner, it would not sufficiently cure the defects of their pleading.  A licensing bond is, by the terms of the relevant statute, intended to be "for the benefit of," inter alia, "[a] homeowner contracting for home improvement upon the homeowner's personal family residence" who has been "*damaged* as a result of a violation of this chapter by the licensee."  (Italics added.)  This is the provision pursuant to which the Vigils claim Wesco is liable to them for the alleged violations of its principal, Houle.  According to the language of the statute, however, in order for a surety to be liable for a license law

7

violation of its principal, a homeowner must have suffered damage as a result of the particular violation alleged to have been committed by the principal. (§ 7071.5, subd. (a); see also *All Bay Mill & Lumber Co. v. Surety Co.* (1989) 208 Cal.App.3d 11, 17 ["A contractor's bond is for the benefit of persons *damaged* as a result of a contractor's violation of the Contractors State License Law" and "not every technical violation of the Contractors State License Law will give rise to a right to collect under the bond"].)

The Vigils have not provided any indication as to how they could amend to allege that they suffered any damage, *separate and apart from the damage that they have already alleged they suffered as a result of Houle's original poor workmanship and defective construction*, arising from Houle's separate act of failing to repair the original defective construction when requested to do so at a later point in time. Wesco's bond did not go into effect until August 29, 2012—almost two months after July 5, 2012, the date on which the Vigils allege construction was completed and final payment was made. The only damage that the Vigils have identified either in the record or in briefing on appeal is damage arising from the original construction completed by Houle—i.e., construction that the Vigils alleged Houle "failed to perform . . . in a good and workmanlike fashion." Because the Vigils have failed to identify any separate and additional harm they suffered as a result of Houle's failure to repair when requested, they have not met their burden to demonstrate that there is a reasonable probability that they can allege a viable cause of action against Wesco for any acts or omissions of its principal during the effective period of Wesco's bond.

8

The Vigils' alternative argument is that Houle engaged in fraud that essentially continued into the bonding period.  Specifically, the Vigils assert on appeal that Houle "represented to Appellants that the construction work being performed at the Appellants' residence would be done under the supervision of a licensed contractor," in order to induce them to "pay Houle for unlicensed construction work in violation of Business & Professions Code section 7068.1 . . . ."  They further assert that they "first discovered and learned about Houle's fraudulent scheme at James Houle's deposition when Mr. Houle informed Appellants that he had stated to Mr. Villa, the construction supervisor on the Appellants' project and an unlicensed contractor/officer of Houle, that immediately before Houle and Villa entered into the subject construction contract that he, James Houle, would not be acting as the RMO or as a supervisor for any jobs on behalf of Houle Construction any longer."  According to the Vigils, "because of this active concealment of the truth, Appellants justifiably relied upon these representations because the Appellants had no means to discover the truth about Houle's scheme and conspiracy until after the conspiracy was completed."

In attempting to demonstrate that this proposed fraud claim could form the basis of liability as to *Wesco*, the Vigils assert that "the last overt act of the conspiracy to commit this fraudulent scheme by Houle and Villa occurred *when Villa continued to make claims that Houle was properly licensed throughout the entire construction period as late as December 2012*, during the Respondent's bonding period."  (Italics added.)

9

The Vigils cannot demonstrate a reasonable probability of curing the defects of their pleading with respect to Wesco through this proposed cause of action. The fraud theory that the Vigils maintain would cure the defects in their cross-complaint as to Wesco demonstrates that the alleged fraud, i.e., misconduct on Houle's part that might have triggered a bonding company's liability, involved Houle's alleged misrepresentation "that the construction work being performed at the Appellants' residence would be done under the supervision of a licensed contractor." The Vigils claim that this misrepresentation induced them to "pay Houle for unlicensed construction work," to their detriment. As the cross-complaint alleges, however, the construction work was completed by, and final payment provided as of, July 5, 2012. Thus, any misrepresentations that Houle may have made, and any resulting damage to the Vigils that may have occurred based on the Vigils' reliance on such alleged misrepresentations, *necessarily must have occurred prior to July 5, 2012*.

Again, Wesco's bond was not in effect until August 29, 2012. The Vigils have offered no allegation of any additional harm that they suffered as a result of a Houle representative's allegedly fraudulent December 2012 assertions that Houle's work was performed by a licensed contractor throughout the entire construction period. Thus, even if we were to assume that the allegations the Vigils assert on appeal are true, the statements made by a Houle employee in December 2012 cannot support an actionable claim for fraud against Houle because the Vigils have not identified how they were damaged by Houle's alleged misrepresentations in December 2012 regarding the loss of

10

its contractor's license. In the absence of a demonstration as to how the Vigils could sufficiently allege all of the elements of a cause of action for fraud as to Houle that includes acts or omissions that occurred during the bonding period, the Vigils have not met their burden to demonstrate how they could cure the defects of their cross-complaint as to Wesco.

The Vigils have failed to convince us that there is any reasonable probability that they could cure the defects of their cross-complaint with respect to their claim against Wesco. Wesco's contractor's license bond was issued after the completion of the construction project at issue. Although the Vigils have been creative in their attempt to ensnare Wesco in this litigation, they have not demonstrated how they could amend their pleading to state a viable claim against Wesco. We therefore conclude that the trial court did not abuse its discretion in sustaining Wesco's demurrer without leave to amend.

IV.

DISPOSITION

The judgment is affirmed.

_____
AARON, J.

WE CONCUR:

_____
HUFFMAN, Acting P. J.

_____
O'ROURKE, J.

11