[No. B076895. Second Dist., Div. Two. Mar. 22, 1994.]

T&R PAINTING CONSTRUCTION, INC., Plaintiff and Appellant, v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Fierstein & Sturman and John D. Hanover for Plaintiff and Appellant.

Anderson, McPharlin & Conners and Larry E. Robinson for Defendant and Respondent.

OPINION

**BOREN, P. J.**—The question presented by this appeal is whether the surety on a construction bond is liable for attorney fees incurred by a bond beneficiary. The beneficiary's contract with the surety's principal calls for the payment of fees to the prevailing party in the event of any legal action.

Following the statutory mandate that a surety's liability is commensurate with that of its principal (Civ. Code, § 2808), we conclude that the surety is liable for the attorney fees that its principal was ordered to pay to the beneficiary after a legal dispute was resolved in favor of the beneficiary.

FACTS

A property owner, London Pacific Investors (LPI), hired a general contractor, Capitol Systems (Capitol), to construct a residential development called Sycamore Village. The contractor, Capitol, obtained performance and payment bonds from respondent St. Paul Fire and Marine Insurance Company (St. Paul). In the payment bond, St. Paul agreed to pay claims made by

subcontractors in the event that Capitol failed to pay the subcontractors for labor and materials supplied.[1] The payment bond does not have an attorney fees clause.

Appellant T&R Painting Construction, Inc. (T&R) entered into a subcontract with Capitol to work on the first phase of Sycamore Village. The subcontract entitled the prevailing party in any litigation to recover its attorney fees. After T&R completed a portion of its work, Capitol terminated the subcontract on the grounds that T&R's work was defective. The dispute was submitted to arbitration, as required by the subcontract. The arbitrator found that the termination was not supported by the evidence, and that T&R was entitled to recover 75 percent of the subcontract price, or $62,062, plus interest, as the agreed value of its work. The arbitrator also awarded T&R its attorney fees and costs as the prevailing party on the subcontract.

After the arbitration award was rendered, Capitol filed a bankruptcy petition. The automatic bankruptcy stay was lifted to allow T&R to obtain judgment in state court on its arbitration award. In the meantime, T&R and LPI settled T&R's action to foreclose on a mechanic's lien. T&R retained its contractual rights against Capitol for its attorney fees and costs. Subsequently, T&R petitioned the superior court for confirmation of the arbitration award against Capitol, and judgment was entered thereon.

In March of 1993, T&R went to trial against St. Paul on the action it filed in 1989. The only issue before the trial court was whether St. Paul was liable for the attorney fees T&R incurred in prosecuting its claims, including arbitration, against Capitol. St. Paul prevailed. T&R appeals.

---

[1] In relevant part, the labor and material payment bond provides as follows: "Now, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal [Capitol] shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions: [¶] 1. A claimant is defined as one having a direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract . . . . [¶] 2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. . . ."

## Discussion

### 1. *"One Final Judgment Rule"*

██ Initially, St. Paul contends that this action is barred by the "one final judgment" rule. In support of its argument, St. Paul cites cases which set forth the doctrine of res judicata. St. Paul reasons that the judgment T&R obtained against Capitol after arbitration precludes any subsequent proceedings against St. Paul because a second action between the same parties on the same claim is impermissible (citing *Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865]).

██ The two concepts to which St. Paul alludes are somewhat intertwined. The "one final judgment" rule prevents piecemeal dispositions and multiple appeals by requiring a final (as opposed to interlocutory) judgment before an appeal may lie. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 43, pp. 66-67.) The doctrine of res judicata also addresses the issue of finality: it gives conclusive effect to final judgments in subsequent litigation between the same parties over the same controversy. (7 Witkin, Cal. Procedure, *supra*, Judgment, §§ 188-189, pp. 621-622.)

Obviously, Capitol and St. Paul are not, strictly speaking, the "same parties." As principal and surety, respectively, they have a unity of interest. ██ Because of the nature of the principal/surety relationship, the courts have carved out a special rule for cases involving sureties and other parties having a unity of interest. The rule is that when one party to a judgment has a unity of interest with another party whose rights are not determined by the judgment, no appeal lies until the rights or duties of the interested party have been resolved by a final judgment. (*Millsap* v. *Federal Express Corp.* (1991) 227 Cal.App.3d 425, 430, fn. 2 [277 Cal.Rptr. 807]; *Fleuret* v. *Hale Constr. Co.* (1970) 12 Cal.App.3d 227, 230 [90 Cal.Rptr. 557]; *Call* v. *Alcan Pacific Co.* (1967) 251 Cal.App.2d 442, 449, fn. 11 [59 Cal.Rptr. 763] ["When a lawsuit involves a single claim against principal and surety, an appellate court should not be subjected to their separate appeals."].)

██ In this case, St. Paul did not participate in the arbitration proceeding which led to the award in favor of T&R, even though St. Paul was individually named in T&R's suit. The arbitrator did not address the issue of St. Paul's liability as surety. Because that issue remained unresolved, the judgment was not yet final for purposes of taking an appeal.

We also note that "[i]n an action against several defendants, the Court may, in its discretion, render judgment against one or more of them, leaving

the action to proceed against the others, whenever a several judgment is proper." (Code Civ. Proc., § 579.) Here, T&R was required to arbitrate its claims against Capitol, by virtue of the subcontract which contained an arbitration clause. T&R then obtained judgment against Capitol when the arbitration award was confirmed. It was an appropriate exercise of the court's discretion to allow the case to continue on against Capitol's surety because the arbitrator did not purport to resolve the issue of St. Paul's liability on the bond.

## 2. *Liability for Attorney Fees*

A bond securing a work of improvement "will be construed most strongly against the surety and in favor of all persons for whose benefit such bond is given, and under no circumstances shall a surety be released from liability to those for whose benefit such bond has been given, by reason of any breach of contract between the owner and original contractor or on the part of any obligee named in such bond . . . ." (Civ. Code, § 3226.)

As a subcontractor, T&R is by law a person for whose benefit a bond is given, and who may enforce liability on the bond against both the principal and surety. (Civ. Code, §§ 3110, 3226; Code Civ. Proc., §§ 995.130, 996.410.) The labor and material payment bond itself states that it is "for the use and benefit of claimants." A claimant is defined in the bond as "one having a direct .contract with the Principal [Capitol] or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract . . . ."

No California court has squarely decided whether the claimant on a payment bond is entitled to recover attorney fees from the surety based on an attorney fees clause in a subcontract. (Conners, Cal. Surety & Fidelity Bond Practice (Cont.Ed.Bar Supp. 1992) § 7.45A, pp. 47-48.)

It has long been the law in California that property owners who are bond beneficiaries (or obligees) may be entitled to recoup attorney fees from a surety as "special damages" arising directly from the principal's failure to perform its duties under a construction contract. The theory behind this rule is that the bond is security for the covenants of the underlying contract. (*Tally* v. *Ganahl* (1907) 151 Cal. 418, 423-424 [90 P. 1049]; *Bird* v. *American Surety Co.* (1917) 175 Cal. 625, 631 [166 P. 1009]; *Cohn* v. *Smith* (1918) 37 Cal.App. 764, 767-768 [174 P. 682].)

The courts have also recognized that certain bond claimants are entitled to recover from a surety the attorney fees they expend to enforce their contract

with the principal, if the contract between the principal and the claimant expressly calls for the payment of attorney fees. (See *Grace* v. *Croninger* (1922) 56 Cal.App. 659, 667-668 [206 P.' 130] [surety who guaranteed performance of a lease containing an attorney fees clause is liable for the payment of such fees] and *Boliver* v. *Surety Co.* (1977) 72 Cal.App.3d Supp. 22 [140 Cal.Rptr. 259]; Conners, Cal. Surety & Fidelity Bond Practice (Cont.Ed.Bar 1969) § 7.24, p. 72.)

In these latter cases, where the underlying contract contained an attorney fees clause, the courts relied in large part upon a specific statute, Civil Code section 2808, as the basis for imposing a duty to pay fees on the surety. Section 2808 states, "Where one assumes liability as surety upon a conditional obligation, his liability is commensurate with that of the principal . . . ."

The broad sweep of Civil Code section 2808 was central to the appellate department's decision in *Boliver* v. *Surety Co., supra,* 72 Cal.App.3d Supp. 22.) In that case, the surety issued a contractor's licensing bond to its principal in 1971. The bond did not have a provision addressing liability for attorney fees. Two years later, the principal entered a contract to construct a private residence. The 1973 construction contract contained an attorney fees clause. The principal failed to complete his work, and the work he did contained substantial defects. The homeowner sued both the principal and his surety. The trial court ruled against the principal, but found that the surety was not liable for its principal's attorney fees.

On appeal, the appellate department determined that the homeowner could recover attorney fees from the surety. The court reasoned that the surety's liability was commensurate with that of the principal (Civ. Code, § 2808), and that the principal's liability to the homeowner included attorney fees pursuant to contract. Thus, the court wrote, "If the obligation of the Surety is commensurate with that of each of the principals, it properly should include their burden of attorney's fees as well as the basic liability." (72 Cal.App.3d at p. Supp. 31.)

The court in *Boliver* concluded that the imposition of attorney fees on the surety is appropriate when the following elements are present: (a) a construction contract, (b) providing for attorney fees to the prevailing party, (c) supported by a surety bond issued by a third party, and (d) where the bond does not provide for liability for attorney fees. (72 Cal.App.3d at p. Supp. 32.)

■ We agree with the *Boliver* court's analysis, which has been unchallenged for nearly 17 years.[2] The distinctions between this case and *Boliver* are not crucial.[3] Like the homeowner in *Boliver*, T&R is a party for whose use and benefit Capitol's surety bond was issued. In both *Boliver* and this case, the contract between the bond claimant and the principal was entered into after the bond was issued, and the surety was not involved in the negotiation of that contract.

Civil Code section 2808 does not distinguish between subcontractors and owners, or between payment and performance bonds. It flatly provides that a surety's liability is commensurate with the liability of its principal. The "California Surety & Fidelity Bonds" handbook acknowledges that because, under *Boliver*, an owner in a performance bond case can recover fees against a license bond surety, ". . . it appears that a payment bond claimant should also be able to recover." (Conners, Cal. Surety & Fidelity Bond Practice (Cont.Ed.Bar Supp. 1992) § 7.45A, pp. 47-48.) Presumably, the surety could limit its liability by specifying that its principals' contracts with potential bond claimants not include attorney fees provisions.

We conclude that the subcontractor in this case can recover from the surety the attorney fees provided for in its subcontract and ordered by the court, so long as the total recovery against the surety, including attorney fees, does not exceed the penal sum of the bond. (Code Civ. Proc., § 996.470; *Hartford Acc. etc. Co.* v. *Indus. Acc. Com.* (1932) 216 Cal. 40, 51 [13 P.2d 699]; *Lawrence Tractor Co.* v. *Carlisle Ins. Co.* (1988) 202 Cal.App.3d 949, 953 [249 Cal.Rptr. 150].)

■ Finally, St. Paul's liability to T&R was not exonerated by LPI's settlement of T&R's mechanic's lien foreclosure action. The settlement expressly excluded T&R's right to recover attorney fees from Capitol.

---

[2] A different portion of the *Boliver* case, relating to Civil Code section 1717, was questioned in *Jones* v. *Drain* (1983) 149 Cal.App.3d 484 [196 Cal.Rptr. 827], although the Supreme Court had previously cited the *Boliver* reasoning with approval in *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83].)

[3] The distinctions are that the beneficiary in *Boliver* was an owner and T&R is a subcontractor, and the bond in *Boliver* was a statutory performance bond whereas the bond here is a private work payment bond. St. Paul argues that the original prime contract should be disregarded in payment bond claims; however, the cases it cites involved statutory bonds under the Public Works Act, which does not apply here. Unlike this case, the principal in the public works cases respondent cites had no contractual relationship with the claimant on the bond. (*Powers Regulator Co.* v. *Seaboard Surety Co.* (1962) 204 Cal.App.2d 338, 344-345 [22 Cal.Rptr. 373]; *California Elec. Supply Co.* v. *United Pac. Life Ins. Co.* (1964) 227 Cal.App.2d 138, 141, fn. 5 [38 Cal.Rptr. 479].)

Because attorney fees were a contracted-for part of Capitol's debt to T&R, no exoneration could occur until that debt was paid in full. A creditor's acceptance of a partial payment of an obligation "reduces the obligation of a surety thereof, in the same measure as that of the principal, but does not otherwise affect it." (Civ. Code, § 2822.) The order in which T&R pursued its various remedies against the defendants does not affect its right to full compensation. (*Sukut-Coulson, Inc.* v. *Allied Canon Co.* (1978) 85 Cal.App.3d 648, 653-655 [149 Cal.Rptr. 711].)

### Disposition

The judgment is reversed. The case is remanded to the trial court for a determination of the amount of attorney fees which should be awarded. Respondent to bear all costs on appeal.

Fukuto, J., and Nott J., concurred.