[No. B083429. Second Dist., Div. Five. Dec. 6, 1995.]

ROYSTER CONSTRUCTION COMPANY, Plaintiff, Cross-defendant and Respondent, v.
URBAN WEST COMMUNITIES et al., Defendants, Cross-complainants and Appellants.

**[Opinion certified for partial publication.*]**

---

*Part "3. Prejudgment Interest" of the Discussion (and appropriate footnotes) of this opinion is not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.).

## COUNSEL

Greenberg, Glusker, Fields, Claman & Machtinger and Michael K. Collins for Defendants, Cross-complainants and Appellants.

Bernard J. Hittner for Plaintiff, Cross-defendant and Respondent.

## OPINION

**GODOY PEREZ, J.**—Defendants and cross-complainants Urban West Communities, UWC-Valley Circle, UWC-Canoga and the American Insurance Company appeal from the judgment following bench trial entered for plaintiff and cross-defendant Royster Construction Company. For the reasons set forth below, we modify the judgment both in regard to its award of attorney fees and its award of prejudgment interest.

### FACTS AND PROCEDURAL HISTORY

Defendants and appellants UWC-Valley Circle and UWC-Canoga are limited partnerships which owned two tracts of land slated for residential development in Canoga Park (the West Hills project). Defendant and appellant Urban West Communities, a California corporation, is a general contractor and a partner in UWC-Valley Circle and UWC-Canoga.[1] Plaintiff and respondent Royster Construction Company (Royster) is a grading contractor. In August 1985, Royster entered into a written agreement with UWC to act as the grading subcontractor for the West Hills project. The contract contained a clause calling for the payment of attorney fees to the prevailing party in an action arising from the agreement. Pursuant to the contract, Royster obtained a performance bond at UWC's expense. Cross-defendant and cross-complainant Transamerica Premier Insurance Company (Transamerica) was the surety on that performance bond.[2]

Royster began grading work in January 1986. Because the project was more difficult than expected, the original estimate of $896,849 eventually

---

[1] UWC-Valley Circle, UWC-Canoga and Urban West Communities will be referred to collectively as "UWC."

[2] Transamerica is not a party to this appeal.

ballooned to $3,772,032.11. By March 1987, Royster's work was nearly 95 percent complete. Disputes arose between Royster and UWC over delays by UWC in making progress payments and the length of time it was taking Royster to finish grading. In May 1987, UWC notified Royster the contract was being terminated for cause and hired another grading subcontractor to finish the job. UWC owed Royster an unpaid balance of $359,289 at that time.

On August 27, 1987, Royster recorded two claims of mechanic's lien, one against each tract of the West Hills project, each in the amount of $405,069.31. On November 24, 1987, Royster sued UWC (and other parties not relevant to this appeal) for breach of contract, various common counts and to foreclose the mechanic's liens. As to each cause of action, Royster sought to recover prejudgment interest "at the legal rate." Royster's complaint gave rise to various cross-complaints, none of which are relevant to this appeal.

Pursuant to Civil Code section 3143, UWC posted two bonds of $607,604 each to release both tracts of land in the West Hills project from Royster's mechanics' liens.[3] The surety on the release bonds was defendant and appellant the American Insurance Company (American), which was added as a party defendant by Royster's supplemental complaint on March 30, 1989.[4]

Based on the parties' stipulation, the superior court appointed retired Judge Judith Ryan as temporary judge for all further proceedings. A bench trial began on March 23, 1992, with 29 days of testimony taken sporadically until February 24, 1993. Judge Ryan filed her notice of intended decision on July 30, 1993, finding that UWC breached the contract by terminating Royster from the West Hills project on May 9, 1987. Royster was to recover damages of $359,289, lost profits of more than $80,000, along with "judgment on the lien release bond in addition to costs, interest and attorneys' fees to be determined."

Proposals and objections concerning the ultimate judgment were filed by the parties. UWC objected to having attorney fees assessed against the lien release bonds. Transamerica proposed that interest of 10 percent run on the sums owed under the contract and mechanic's lien foreclosure claims as of May 9, 1987. UWC did not object to the latter proposal. Judge Ryan's final

---

[3]Civil Code section 3143 permits the owner of property subject to a mechanic's lien to release the property from the lien by posting a bond of one and one-half times the amount of the lien. All further statutory references are to the Civil Code unless otherwise indicated.

[4]UWC and American will sometimes be referred to collectively as "appellants."

judgment was entered on December 6, 1993. On the breach of contract claim, Royster was awarded: damages of $359,289 for breach of contract, with interest to run at 10 percent as of May 9, 1987; lost profits of $80,831, with interest to run at 10 percent from the date Royster's complaint was filed in November 1987; and costs of suit and attorney fees, to be determined in a later costs bill. As for the mechanic's lien claim, Royster was awarded $359,289, plus interest at 10 percent as of May 9, 1987, along with costs of suit and attorney fees as determined by the court, all against the lien release bonds.[5]

UWC then brought a motion for new trial or to vacate the judgment (Code Civ. Proc., §§ 659, 663a, respectively) on the grounds that the judgment as phrased provided for a double recovery and that the judgment impermissibly awarded attorney fees on Royster's mechanic's lien claim. Those motions were denied and the court ruled that Royster was entitled to recover attorney fees against the mechanic's lien release bonds. Appellants raise three issues on appeal: (1) attorney fees are never recoverable on a mechanic's lien claim, a rule which should apply even when recovery is sought against a section 3143 release bond; (2) it was error to award prejudgment interest of 10 percent on the mechanic's lien claim when a rate of 7 percent was applicable; and (3) it was error to award prejudgment interest on the breach of contract claim at 10 percent when a rate of 7 percent was applicable.

DISCUSSION

1. *Recoverability of Attorney Fees Against the Release Bonds*

Appellants do not dispute Royster's entitlement to attorney fees on its contract cause of action since their agreement expressly provided for such fees. Instead, appellants challenge the court's award of attorney fees against American's release bond on the mechanic's lien claim. Nor does Royster dispute that attorney fees are not recoverable in a mechanic's lien action (*Abbett Electric Corp.* v. *California Fed. Savings & Loan Assn.* (1991) 230 Cal.App.3d 355, 359-360 [281 Cal.Rptr. 362], hereafter *Abbett*), but asks that we carve out an exception to this rule when recovery is sought against a release bond posted under section 3143. No reported decision has considered whether the bar against recovering attorney fees on a mechanic's lien claim

---

[5]The judgment was later modified nunc pro tunc to correct certain clerical errors which are not relevant on appeal.

applies when a release bond has been filed under section 3143. We conclude that it does.[6]

Though the statutory scheme for mechanic's liens at one time provided for the recovery of attorney fees, that provision was declared unconstitutional in *Builders' Supply Depot* v. *O'Connor* (1907) 150 Cal. 265, 268 [88 P. 982]. ▮ Since no similar provision was ever later enacted, it is "black letter law that except for any cause of action on a *contract* between the lien claimant and the owner of the improved property which provides for fees, a lienholder has no entitlement to them from the owner. . . . [¶] . . . [I]f indeed a contract exists, then that is the separate source of attorney's fees; it is not the *lien* which creates the right." (*Wilson's Heating & Air Conditioning* v. *Wells Fargo Bank* (1988) 202 Cal.App.3d 1326, 1330 [249 Cal.Rptr. 553], original italics.)

▮ In affirming that attorney fees could not be recovered on a mechanic's lien claim, the *Abbett* court relied in part on the purpose such claims serve: " 'to prevent unjust enrichment of a property owner at the expense of a laborer or material supplier' [citations] . . . ." (*Abbett, supra,* 230 Cal.App.3d at p. 360.) Since a laborer's work benefits the property subject to a mechanic's lien, the owner of that property is subject to a lien for labor and materials to prevent his unjust enrichment. "The same rationale, of course, does not apply to [the laborer's] attorneys, who have not added to the value of the subject property. . . ." (*Ibid.*) The *Abbett* court deemed its conclusion consistent with section 3123, subdivision (a), which does not provide for attorney fees when limiting the amount of a mechanic's lien to " 'the reasonable value of the labor, services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he or she contracted, whichever is less.' " (230 Cal.App.3d at p. 360.) It also comported with California Constitution, article XIV, section 3, which provides mechanic's liens only "for the value of such labor done and material furnished." (230 Cal.App.3d at p. 360.)[7]

In *Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456 [253 Cal.Rptr. 236, 763 P.2d 1326] (hereafter *Hutnick*), our Supreme Court

---

[6]But see footnote 9, *post.*

[7]In contrast, section 3083 governing bonded stop notices provides that if the property owner prevails over the laborer or materialman in an action on a stop notice, the owner is entitled to recover "all damages [he] may sustain by reason of the [stop notice]." This expansive measure of damages has been held to permit the recovery of attorney fees by a property owner who prevails in an action to enforce a stop notice. (*Flintkote Co.* v. *Presley of Northern California* (1984) 154 Cal.App.3d 458, 462-463 [201 Cal.Rptr. 262].) Stop notices and mechanics' liens are part of the same statutory scheme (*id.* at p. 462), and the more restrictive measure of damages provided by the Legislature in section 3123 also convinces us that attorney fees are not recoverable damages in a mechanic's lien action. (*Peñasquitos, Inc.* v. *Superior Court* (1991) 53 Cal.3d 1180, 1188-1189 [283 Cal.Rptr. 135, 812 P.2d 154]

considered the statute of limitations applicable to actions on a mechanic's lien release bond. In doing so, the court provided an instructive discussion about the nature and effect of section 3143 release bonds. ■ While section 3144.5 provides that actions on a release bond must be brought within six months after the bond is recorded, the *Hutnick* court held that statute only applied when the release bond is posted before a mechanic's lien foreclosure action is commenced. When a mechanic's lien foreclosure action is pending at the time the release bond is posted, an action against the surety is not subject to a statute of limitations defense because an action against the bond is the same cause of action as the action to foreclose the lien. (*Hutnick, supra,* 47 Cal.3d at pp. 462-467.)

■ Section 3143 provides that a mechanic's lien release bond "shall be conditioned for the payment of any sum which the claimant may recover on the claim together with his cost of suit in the action, if he recovers therein. . . ."[8] The claim for which the surety and principal assume liability is the claim of lien. The release bond procedure does not deprive the lien claimant of its constitutional right to a lien and instead provides for the speedy and efficient enforcement of the lien. The recording of the release bond does not extinguish the lien; rather, the bond is substituted for the land as the object to which the lien attaches, with the lien transferred from the land to the bond. (*Hutnick, supra,* 47 Cal.3d at pp. 462-463.)

■ In concluding that an action to foreclose a mechanic's lien and an action against the surety on a section 3143 release bond were in fact one and the same cause of action, the *Hutnick* court endorsed several sister state decisions which reached the same result: "Thus it has been said that the bond 'does not change the relation or rights of the parties otherwise than in substituting its obligations for the [property] subject to the lien, and it was not within the legislative purpose in permitting the substitution to deteriorate the lienor's rights.' [Citations.]" (*Hutnick, supra,* 47 Cal.3d at p. 463.) The Supreme Court also quoted in part from an Ohio decision, *Ohio Plate Glass Co. v. Paskin* (1965) 4 Ohio Misc. 136 [33 Ohio Ops.2d 179, 209 N.E.2d 640], for the proposition that an action against a release bond surety "does not change the cause of action [to foreclose the mechanic's lien] in any way." (*Id.* at p. 642.)

If the "relation or rights of the parties" are not changed by the posting of a release bond, and if the cause of action to foreclose the mechanic's lien is

---

[where a statute referring to one subject contains a given provision, the omission of that provision from a similar statute shows that a different legislative intent existed].)

[8]Whether such fees may be recovered as costs is discussed *post.*

also unchanged as a result, we can only conclude that Royster's remedies remain the same, including the bar against recovery of attorney fees.

Royster asks that we ignore this language from *Hutnick* and focus on another portion which states that "the procedure in respect to release bonds [is] parallel to that statutorily prescribed for litigation bonds generally" under the Bond and Undertaking Law (the Bond Law), found at Code of Civil Procedure section 995.010 et seq. (*Hutnick, supra*, 47 Cal.3d at p. 467.) Based on this language, the court in *Grade-Way Construction Co.* v. *Golden Eagle Ins. Co.* (1993) 13 Cal.App.4th 826, 832-835 [16 Cal.Rptr.2d 649], held that section 3143 release bonds are in fact subject to the Bond Law. Since attorney fees are recoverable against other kinds of litigation bonds, Royster contends they are also recoverable here. This argument does not take into account various provisions of the Bond Law. Neither does it consider the legislative history of that law or decisions which interpret it.

■ The Bond Law was enacted by the Legislature in 1982 to "codify in one chapter the provisions relating to bonds and undertakings, the liabilities and responsibilities of the parties to those instruments, and the methods of enforcement that had previously appeared in various statutes and case law. . . ." (*Milo Equipment Corp.* v. *Elsinore Valley Mun. Water Dist.* (1988) 205 Cal.App.3d 1282, 1285-1286 [253 Cal.Rptr. 126].) The California Law Revision Commission Recommendation characterized the Bond Law as an effort to "consolidate general procedural rules applicable to all statutory bonds and undertakings in one place in the Code of Civil Procedure." While the Bond Law would make "an occasional minor substantive change" in the law, the commission "recommends that the procedural bond and undertaking provisions be compiled into one statute" in order to achieve "uniformity in this area of the law." (*Id.* at pp. 1286-1287.)

The Bond Law is therefore largely procedural and works little or no substantive change on the laws which govern the many bonds which fall within its ambit. Code of Civil Procedure section 995.020, subdivision (a) makes this clear: "The provisions of this chapter apply to a bond or undertaking executed, filed, posted, furnished, or otherwise given as security pursuant to any statute of this state, *except to the extent the statute prescribes a different rule or is inconsistent.*" (Italics added.) ■ The sole mention of attorney fees in the Bond Law is found at Code of Civil Procedure section 996.480, which applies only if the principal's liability is first established by way of a final judgment and the time for appeal has expired. If the beneficiary then demands payment on the bond and the surety refuses, the surety is liable for the principal's costs and attorney fees incurred in

obtaining a separate judgment against the surety. (Code Civ. Proc., § 996.480, subd. (a); *Harris* v. *Northwestern National Ins. Co.* (1992) 6 Cal.App.4th 1061, 1066 [8 Cal.Rptr.2d 234] [Code of Civil Procedure section 996.480 provides special rules for cases where the principal's liability has previously been established by a final judgment and a separate suit is brought against the surety].) That procedure was not employed here.[9]

Royster's reliance on the decision in *On* v. *Cow Hollow Properties* (1990) 222 Cal.App.3d 1568 [272 Cal.Rptr. 535], as an example of when attorney fees may be recovered against other litigation bonds is misplaced. The court in *On* permitted the recovery of attorney fees against a lis pendens bond posted under Code of Civil Procedure former section 409.1. Its decision was not based on any requirement of the Bond Law and, in fact, the *On* decision never mentions that law. Instead, the court permitted recovery of attorney fees based on its interpretation of the lis pendens bond statute. (222 Cal.app.3d at pp. 1572-1574.) As we have explained, the release bond provision of section 3143 does not permit an award of such fees.

Further review of the Bond Law's legislative history makes clear that attorney fees are not recoverable against a mechanic's lien release bond. The Bond Law's provisions are not exclusive but are instead supplemented by the general provisions governing all bonds and undertakings, including sections 2787-2855 on suretyship. (See Cal. Law Revision Com. com., 18 West's Ann. Code Civ. Proc. (1995 pocket supp.) foll. § 995.020, p. 54.) Section 2808 states that a surety's liability "is commensurate with that of the principal . . . ." Section 2809 provides: "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation."

■ "The rule is that rights and liabilities under a surety bond are to be determined from the language of the bond *read in the light of applicable statutes.* [Citations.]" (*Morro Palisades Co.* v. *Hartford Accident & Indemnity Co.* (1959) 52 Cal.2d 397, 400-401 [340 P.2d 628], italics added.) "If the surety makes the contract with the law before him, *the law enters into and becomes a part of the agreement.* [Citations.]" (*Hub Hdw. Co.* v. *Aetna Acc. etc. Co.* (1918) 178 Cal. 264, 267 [173 P. 81], italics added.) A surety may raise all defenses allowed to the principal and must only pay on the bond "if the claimant establishes, without reference to the bond, a legal obligation on

---

[9]Accordingly, our holding does not determine whether attorney fees are recoverable against a mechanic's lien release bond pursuant to the provisions of Code of Civil Procedure section 996.480.

the part of the principal to pay. [Citation.]" (*Kalfountzos* v. *Hartford Fire Ins. Co.* (1995) 37 Cal.App.4th 1655, 1659 [44 Cal.Rptr.2d 714].) Pursuant to section 2809, if the principal is not liable on the obligation, neither is the surety. (37 Cal.App.4th at p. 1659, quoting *U.S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 290 [70 Cal.Rptr. 393, 444 P.2d 65].)

The "black letter law" which bars recovery of attorney fees in mechanic's lien actions (*Wilson's Heating & Air Conditioning* v. *Wells Fargo Bank, supra,* 202 Cal.App.3d at p. 1330) became part of UWC's section 3143 release bond. Without reference to that bond, UWC as principal had no legal obligation to pay Royster's attorney fees as part of the mechanic's lien claim. American, as surety on that bond, may raise that defense on its own behalf. Since UWC as principal is not liable on the obligation to pay attorney fees on the mechanic's lien claim, then neither is American as surety for UWC's release bond.[10]

## 2. *Attorney Fees Are Not Recoverable as Costs*

Royster contends that it was entitled to recover its attorney fees as costs, either pursuant to section 1717 under the terms of its agreement with UWC, under the mechanic's lien law, or by the terms of the release bond itself. Each contention is unsound.

Code of Civil Procedure section 1032 provides that the prevailing party in an action is entitled to recover its costs. (Code Civ. Proc., § 1032, subd. (b).) Among the items recoverable as costs under Code of Civil Procedure section 1032 are "(10) Attorney fees, when authorized by any of the following: [¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law." (Code Civ. Proc., § 1033.5, subd. (a)(10).) Attorney fees awarded pursuant to section 1717 are allowable costs under Code of Civil Procedure section 1033.5, subdivision (a)(10)(A). (Code Civ. Proc., § 1033.5, subd. (c)(5).) Section 1717 states that when a contract provides for attorney fees to the party prevailing in an action to enforce the contract, those fees may be awarded as costs. (§ 1717, subd. (a).)

---

[10]Royster also contends that the requirement of a release bond one and one-half times the amount of the mechanic's lien claim should permit the recovery of attorney fees at least up to the amount of the bond. The release bond provision exists to provide "ample guarantee to the lien claimant of the payment of his *claim*." (*Frank Curran Lbr. Co.* v. *Eleven Co.* (1969) 271 Cal.App.2d 175, 184 [76 Cal.Rptr. 753], italics added.) As we have made clear, the damages recoverable on a mechanic's lien claim do not include attorney fees and are instead limited to the reasonable value of the labor or materials which were provided. (Cf. *T&R Painting Construction, Inc.* v. *St. Paul Fire & Marine Ins. Co.* (1994) 23 Cal.App.4th 738, 744-746 [29 Cal.Rptr.2d 199] [surety on contractor's performance bond liable for claimant's attorney fees even though bond did not provide for such fees; since the contractor's agreement with the claimant contained attorney fees clause, surety's obligations were the same as the contractor's under section 2808].)

To the extent Royster contends it was properly awarded attorney fees under section 1717 by way of the attorney fee clause in its grading contract with UWC, the *Abbett* court considered and rejected that precise contention. (*Abbett, supra,* 230 Cal.App.3d at p. 361 ["Civil Code section 1717 provides for attorney fees only in contract actions. It does not extend to mechanic's lien foreclosures where, as previously noted, such fees are not recoverable."].) Since UWC was not obligated under section 1717 to pay attorney fees as costs on the mechanic's lien claim, neither was American as surety on the release bond. (§§ 2808, 2809.)

Royster also errs to the extent it argues such fees were provided for in the section 3143 release bond. The release bond states that American was to pay "any sum which [Royster] may recover on said [mechanic's lien] claim, together with his costs of suit in the action, not exceeding the penal sum of this bond . . . ." The usual rules of contract interpretation apply to attorney fee clauses. (*Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1344-1345 [5 Cal.Rptr.2d 154].) A contract which provides for the payment of "costs" alone does not usually include attorney fees. (*California Teachers Assn.* v. *Governing Board* (1984) 161 Cal.App.3d 393, 400 [207 Cal.Rptr. 659]; *Citizens Suburban Co.* v. *Rosemont Dev. Co.* (1966) 244 Cal.App.2d 666, 683 [53 Cal.Rptr. 551].) Since the release bond merely states that Royster is entitled to recover its costs of suit, the bond does not provide for payment of Royster's attorney fees.[11]

Neither are attorney fees recoverable by statute. (Code Civ. Proc., § 1033.5, subd. (a)(10)(B).) Section 3143 states that a release bond surety must pay a lienholder's costs of suit. Section 3150 is the only provision of the mechanic's lien law which defines costs: "In addition to any other costs allowed by law, the court in an action to foreclose a lien must also allow as costs the money paid for verifying and recording the lien, such costs to be allowed each claimant whose lien is established, whether he be plaintiff or defendant."

While Royster argues for an expansive interpretation of sections 3143 and 3150 which would somehow permit the recovery of attorney fees as costs allowed by law, the law is to the contrary. (*Abbett, supra,* 230 Cal.App.3d at p. 358 ["[N]o statute provides for attorney's fees in mechanic's lien foreclosures. [Citation.]"].) The Legislature's failure to specify that attorney fees and costs are both recoverable in mechanic's lien foreclosure actions renders

---

[11]The same holds true for the release bond's provision that Royster will be paid whatever "sum which said claimant may recover on said claim . . . ." As discussed, *ante,* attorney fees are not recoverable damages on a mechanic's lien claim.

inapplicable an award of fees as costs provided by statute under Code of Civil Procedure section 1033.5. (Code Civ. Proc., § 1033.5, subd. (c)(5) [attorney fees are recoverable as costs under this statute "[w]hen any statute of this state refers to the award of 'costs and attorney's fees' "].) Well-accepted rules of statutory construction also compel this result. In stop notice actions, the Legislature has expressly provided for the recovery of "reasonable attorney's fees in addition to other costs and in addition to any liability for damages." (§ 3176.) The absence of such a provision from the companion statutes governing mechanics' liens shows a clear legislative intent to preclude recovery of attorney fees in connection with those actions. (*Penasquitos, Inc.* v. *Superior Court, supra,* 53 Cal.3d at pp. 1188-1189.)

Finally, as this decision makes clear, attorney fees are not recoverable by law in mechanic's lien foreclosure actions. By law, the obligation of a section 3143 release bond surety is the same as the principal/property owner, also barring recovery of such fees against a release bond, whether as damages or costs.

3. *Prejudgment Interest\**

. . . . . . . . . . . . . . . . . . . . . . . . .

## Disposition

For the reasons set forth above, the judgment is modified to delete the award of attorney fees to Royster on its mechanic's lien claim. The judgment is modified to award prejudgment interest of 7 percent on the mechanic's lien claim from May 9, 1987, to the date of judgment. On the breach of contract claim, the judgment is modified to award prejudgment interest of 7 percent for breach of contract from May 9, 1987, to the date of judgment and prejudgment interest of 7 percent for lost profits from November 24, 1987, through the date of judgment. The judgment is affirmed in all other respects. Appellants to recover their costs on appeal.

Turner, P. J., and Grignon, J., concurred.

---

*See footnote, *ante*, page 1158.