[No. B152512. Second Dist., Div. Three. Apr. 4, 2002.]

NATIONAL TECHNICAL SYSTEMS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
UNITED PACIFIC INSURANCE COMPANY, Real Party in Interest.

416

## COUNSEL

Maher & Maher and Cynthia R. Maher for Petitioner.

No appearance for Respondent.

Procopio Cory Hargreaves & Savitch, Craig A. Ramseyer and Laura K. Gantney for Real Party in Interest.

## OPINION

**KLEIN, P. J.**—Plaintiff National Technical Systems (NTS) seeks a writ of mandate directing respondent superior court to vacate its order granting certain motions in limine filed by defendant and real party in interest United Pacific Insurance Company (UPIC or the surety) and to enter a new order denying the motions.

In this action, NTS, a subcontractor, seeks to enforce a stop notice release bond against UPIC, the bond surety. The trial court's rulings preclude NTS from presenting evidence of the prior trial or judgment it obtained against the general contractor, and from presenting evidence regarding its attorney fees and statutory interest penalties. The issues presented are whether the

surety is bound by the judgment in the prior action against its principal to which the surety was not a party, and whether the surety's liability on the stop notice release bond extends to attorney fees and statutory penalties.

We conclude the surety is not bound by the earlier judgment against its principal and therefore UPIC is not bound by the provisions in that judgment awarding attorney fees and statutory penalties to NTS. However, a surety's liability on the bond is commensurate with that of its principal. Therefore, upon an appropriate showing, NTS may recover attorney fees and statutory penalties against UPIC. The petition is granted with directions.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The prior action.*

On April 9, 1996, Commercial Contractors, Inc. (the general contractor) entered into a contract with the City of Long Beach (the city), a public entity, to perform remediation and excavation work in the Port of Long Beach.[1] On April 16, 1996, the general contractor hired NTS as a subcontractor on the project.

NTS claimed it was only partially paid for services rendered to the general contractor, and on March 21, 1997, NTS filed a stop notice with the city in the amount of $343,905.[2]

On April 8, 1997, the general contractor obtained a stop notice release bond from UPIC, the surety, in the sum of $429,881 to release money withheld on the stop notice. On April 30, 1997, UPIC notified NTS that the general contractor had filed a bond to release money withheld on the stop notice.

Although NTS was aware of UPIC's issuance of the bond, on May 17, 1997, NTS filed suit against the general contractor (*NTS v. CCI* (Super. Ct. L.A. County, 1997, No. NC021319)), seeking damages on the contract,

---

[1] Neither the general contractor nor the city is a party to this writ proceeding.

[2] A "stop notice" is a remedy to reach unexpended construction funds in the hands of the owner or lender, is available on both public and private works, and may be served by a claimant other than an original contractor. (Civ. Code, § 3181; *Department of Industrial Relations v. Fidelity Roof Co.* (1997) 60 Cal.App.4th 411, 419 [70 Cal.Rptr.2d 465].) If the general contractor disputes a stop notice claim, the public entity may permit the general contractor to post a stop notice release bond. (Civ. Code, § 3196.) After the bond is posted, the remedies of the claimant rest solely on the bond and the public entity may not withhold money due the general contractor on account of the stop notice. (Civ. Code, § 3196; *Winick Corp. v. County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1178 [230 Cal.Rptr. 289].)

enforcement of the stop notice, and recovery on the bond, without naming the surety.

On or about January 31, 1999, on the eve of trial, NTS moved for leave to file a second amended complaint to add UPIC as a party and to add a new cause of action for recovery on the bond "so that it may avail itself of the summary proceeding provided by . . . section 996.440 [of the California Bond and Undertaking Law (Code Civ. Proc., § 995.010 et seq.] [¶] Otherwise, [plaintiff] will be required to file a separate civil action against [the general contractor] and the Surety to recover on the Bond."[3]

The general contractor opposed the motion to amend, arguing UPIC had not participated in any manner during the course of the litigation and that it would be unduly prejudicial to UPIC to force it to defend itself on the eve of trial. The trial court denied leave to amend because trial was imminent and UPIC had not been involved in any of the discovery or other trial preparation in the action. The matter came on for a jury trial, the amount due and owing from the general contractor to NTS was litigated, and the trial court entered judgment in favor of NTS. Neither party appealed.

On October 11, 1999, NTS made demand upon UPIC for payment of $466,552, including the damages award of $178,631, prejudgment interest, $204,468 in attorney fees, and statutory interest penalties pursuant to Business and Professions Code section 7108.5 of 2 percent per month.

UPIC refused to pay. It advised NTS by letter that it "was never served with the lawsuit or made a party to the lawsuit. The first notice of claim was [the subcontractor's] letter of October 11, 1999. The verdict does not mention either the stop notice, the [city] or [the surety]. [The subcontractor's] judgment is only against [the general contractor]. [¶] . . . [¶] While we do not require that you file an action to enforce your rights, [the surety] is not bound by the judgment . . . . There is no basis at this time to make payment to your client. If your client seeks to enforce its rights on the stop notice release bond, [the surety] will have the opportunity to assert all the relevant defenses on the claim. . . ."

On March 14, 2000, NTS filed a motion for summary enforcement of the judgment against UPIC pursuant to section 996.440. NTS asserted that having obtained a judgment against the general contractor, and the judgment having become final, NTS was now entitled to enforce the judgment against the surety.

---

[3]All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

On April 18, 2000, the trial court denied NTS's motion for summary enforcement against UPIC of the judgment NTS had obtained against the general contractor. NTS appealed.

In *National Technical Systems v. Commercial Contractors, Inc.* (2001) 89 Cal.App.4th 1000 [108 Cal.Rptr.2d 67], this court affirmed the order denying NTS's motion for summary enforcement of the judgment. Because the issuance of the stop notice release bond preceded the filing of the lawsuit, the bond was not "given in an action or proceeding," and hence, the summary enforcement procedure of section 996.440 was inapplicable. Instead, because the bond preceded the lawsuit, the surety had a right to be joined as a party and to defend the action. (§ 996.430.) NTS's failure to join UPIC as a party to the action barred NTS from summarily enforcing the judgment against UPIC. Therefore, NTS would have to litigate the liability on the bond as against UPIC. (*National Technical Systems, supra*, 89 Cal.App.4th at p. 1011.)

### 2. *The instant action.*

On March 1, 2000, during the pendency of NTS's prior action against the general contractor, NTS filed the instant action against the surety (*NTS v. UPIC* (Super. Ct. L.A. County, 2000, No. NC027374)). NTS alleged causes of action for (1) recovery on the stop notice release bond and (2) breach of the written bond contract between the general contractor and UPIC, which had been issued for NTS's benefit.

On or about January 30, 2001, UPIC filed two motions in limine. The first motion sought to preclude evidence of the previous trial and judgment against the general contractor on the ground that UPIC was not named as a party to the prior action and therefore UPIC was not bound by NTS's judgment against the general contractor. In the second motion, UPIC sought to preclude evidence of nonrecoverable damages, contending that certain elements of damage asserted by NTS, specifically, attorney fees, statutory penalties, delay or other damages, were not recoverable under the stop notice release bond, and UPIC's liability was limited to the value of labor, services, equipment or materials actually furnished to the project.

The trial court granted both motions in limine. It ruled UPIC was not bound by NTS's judgment against the general contractor, that the doctrine of collateral estoppel does not apply, and UPIC may relitigate the issue of damages. Further, UPIC was not liable to NTS for the attorney fee award which was entered against the general contractor or for statutory penalties, and UPIC's liability on the bond was limited to the value of labor, services, equipment or materials actually furnished to the project.

NTS filed the instant petition for writ of mandate, seeking review of the trial court's ruling on the motions in limine. This court issued an order to show cause.

CONTENTIONS

NTS contends the trial court erred in granting UPIC's motions in limine because UPIC is bound by the judgment against the general contractor, and UPIC's liability on the bond extends to the attorney fees and penalties awarded against the general contractor as part of the judgment obtained by NTS.[4]

DISCUSSION

1.  *Trial court properly granted motion in limine to the extent it precluded evidence of the judgment against the general contractor because the surety is not bound by the subcontractor's judgment against the general contractor.*

■ UPIC is not bound by NTS's judgment against the general contractor because "[i]t is well established that a judgment against a principal is not binding in a separate action against a surety. (*Mahana* v. *Alexander* (1927) 88 Cal.App. 111, 119-122 [263 P. 260]; *Kane* v. *Mendenhall* (1936) 5 Cal.2d 749, 751 [56 P.2d 498]; *Jew* v. *Pacific Employers Ins. Co.* (1961) 196 Cal.App.2d 310, 316 [16 Cal.Rptr. 542].)" (*All Bay Mill & Lumber Co. v. Surety Co.* (1989) 208 Cal.App.3d 11, 17 [255 Cal.Rptr. 790].)

*All Bay Mill & Lumber Co.* is illustrative. There, a building material supplier brought an action against a general contractor and the contractor's license bond surety to recover for unpaid materials it had supplied. (*All Bay Mill & Lumber Co. v. Surety Co., supra,* 208 Cal.App.3d at pp. 14, 17.) The contractor did not answer the complaint and a default judgment was entered against it. (*Id.* at p. 17.) The action against the surety went to trial and the surety prevailed. (*Id.* at p. 14.) The reviewing court rejected the plaintiff's contention the default judgment against the contractor was binding on the surety. (*Id.* at p. 17.)

In concluding the judgment against the principal was not binding on the surety, *All Bay Mill & Lumber Co.* explained: " ' "In the case of official

---

[4]NTS does not challenge the trial court's ruling on the second motion in limine, insofar as it granted UPIC's motion to preclude NTS from presenting evidence of delay or other damages. Therefore, those issues are not before us. With respect to UPIC's liability on the bond, our review is limited to NTS's contentions concerning attorney fees and statutory penalties.

bonds, the surety undertakes in general terms that the principal will perform his official duty. They do not agree to be absolutely bound by any judgment obtained against the principal for official misconduct nor to pay any such judgment. They are only held for a breach of their own obligations. It is a general principle that no party can be so held without an opportunity to be heard in defense. *This right is not divested by the fact that another party has defended on the cause of action and has been unsuccessful.* As the surety did not stipulate' that [it] would be absolutely bound by the judgment against the principal or permit [it] to conduct the defense and be themselves responsible for the result of it, the fact that the principal has unsuccessfully defended has no effect on their rights." ' (*Mahana* v. *Alexander, supra,* 88 Cal.App. at p. 120, quoting *Pico v. Webster* (1859) 14 Cal. 202 [, 204].)" (*All Bay Mill & Lumber Co., supra,* 208 Cal.App.3d at pp. 17-18, italics added.)

Guided by the above authorities, we conclude UPIC is not bound by the judgment NTS obtained against the general contractor.

An additional rationale for holding UPIC is not bound by NTS's judgment against the general contractor is found in *National Technical Systems v. Commercial Contractors, Inc., supra,* 89 Cal.App.4th 1000. As we explained, the reason "for distinguishing between a bond given *before* an action is commenced and a bond given *afterwards* pertains to the surety's right to notice. Where the stop notice release bond is issued *after* the filing of the lawsuit, i.e., is 'given in an action or proceeding,' the surety is deemed to have notice of the action. At that juncture, the surety may move to intervene in the action (§ 387), or it may simply elect to await the final judgment in the action and the plaintiff's enforcement of the liability on the bond through the summary procedure of section 996.440. That decision is left to the surety. However, where the stop notice release bond is issued *before* the lawsuit is filed, the bond is *not* 'given in an action or proceeding,' and consequently the plaintiff is required to join both the principal and surety pursuant to section 996.430, thereby giving the surety notice of the action so as to enable the surety to protect its rights." (*National Technical Systems, supra,* 89 Cal.App.4th at p. 1010.)

Accordingly, the trial court properly granted UPIC's motion in limine to exclude any reference to the judgment which NTS obtained against the general contractor.

However, to the extent the trial court precluded NTS from referring in any way to the previous trial, that ruling was overbroad. For example, there may be testimony in the previous trial which may be admissible for impeachment purposes. UPIC's rights are sufficiently protected by precluding NTS from

presenting any evidence of the verdict or judgment against the general contractor. The ruling shall be modified accordingly.

    2.   *Trial court erred in granting motion in limine to exclude evidence of NTS's attorney fees and statutory penalties.*

    ■   As explained, UPIC is not bound by the prior judgment and therefore UPIC is not bound by the provisions in the judgment awarding attorney fees and statutory penalties to NTS. However, the issue remains whether, upon a proper showing, NTS may recover attorney fees and statutory penalties against the surety. We address the issue to guide the parties on remand. (See § 43.)

    a.   *Civil Code section 3103 does not limit the scope of the surety's liability on the bond.*

    UPIC contends, and the trial court found, the surety's liability on a stop notice release bond is limited to the value of labor, services, equipment or materials furnished to the project. UPIC's argument rests on Civil Code section 3103, which requires a claimant to set forth in a stop notice, inter alia, the "kind of labor, services, equipment, or materials furnished or agreed to be furnished by such claimant" (Civ. Code, § 3103, subd. (a)) and the "amount in value, as near as may be, of that already done or furnished and of the whole agreed to be done or furnished." (Civ. Code, § 3103, subd. (c).) Based on the above, UPIC contends a surety issuing a stop notice release bond cannot be liable for attorney fees or any other types of damage.

    UPIC reads too much into Civil Code section 3103. That statute simply dictates what information a claimant must provide in a stop notice. However, the statute does not purport to govern the nature of the surety's liability on a stop notice release bond and does not resolve the issue of a surety's liability for attorney fees or statutory penalties.

    b.   *Surety's liability for attorney fees.*

    The issue presented is whether NTS, as the claimant on the stop notice release bond, is entitled to recover attorney fees from the surety based on the attorney fees clause in the subcontract.

    Here, the subcontract between the general contractor and NTS included the following attorney fees clause: "In the event either CONTRACTOR or SUBCONTRACTOR institutes suit in court against the other party, or against the surety of such party, in connection with any dispute or matter arising under

this Agreement, the party which prevails in that suit shall be entitled to recover from the other its attorney's fees in reasonable amount, which shall be determined by the court and included in the judgment in said suit."

Civil Code section 2808 broadly provides: "Where one assumes liability as surety upon a conditional obligation, his liability is commensurate with that of the principal . . . ." The purpose of the bond is to serve as "security for the covenants of the underlying contract. [Citations.]" (*T&R Painting Construction, Inc. v. St. Paul Fire & Marine Ins. Co.* (1994) 23 Cal.App.4th 738, 744 [29 Cal.Rptr.2d 199] (*T&R Painting*).) It reasonably follows that UPIC's liability on the stop notice release bond extends to the attorney fees to which NTS is entitled under the subcontract.

*Boliver v. Surety Co.* (1977) 72 Cal.App.3d Supp. 22 [140 Cal.Rptr. 259], is in accord. There, the surety issued a contractor's license bond. (*Id.* at pp. Supp. 25-26.) The bond did not have a provision for attorney fees. (*Id.* at p. Supp. 28.) Subsequently, the contractor entered into an agreement to construct a private residence. (*Id.* at p. Supp. 26.) The construction contract contained an attorney fees clause. (*Id.* at p. Supp. 26, fn. 2.) The homeowner successfully sued both the contractor and the surety for a failure of completion and substantial defects in the construction work done. (*Id.* at pp. Supp. 26-27.)

*Boliver* held the surety's liability on the bond included the contractor's obligation for attorney fees. (*Boliver v. Surety Co., supra,* 72 Cal.App.3d at pp. Supp. 30-32.) *Boliver* reasoned the surety's liability was commensurate with that of the principal (Civ. Code, § 2808), and the contractor's liability to the prevailing homeowner included attorney fees awarded by the trial court pursuant to the construction contract. (*Boliver*, at pp. Supp. 30-31.) *Boliver* held, "If the obligation of [the] Surety is commensurate with that of each of the principals, it properly should include their burden of attorney's fees as well as the basic liability." (*Id.* at p. Supp. 31.)

*Boliver* concluded the imposition of liability for attorney fees upon the surety is appropriate when the following elements are present: (a) there is a construction contract, (b) providing for attorney fees to the prevailing party, and (c) supported by a surety bond issued by a third party, even though the surety bond does not specifically provide for the surety's liability for attorney fees. (*Boliver v. Surety Co., supra,* 72 Cal.App.3d at p. Supp. 32.)[5]

*T&R Painting, supra,* 23 Cal.App.4th at pages 745-746, agreed with *Boliver*'s analysis. In *T&R Painting,* the subcontract entitled the prevailing

---

[5]*Boliver* was cited with approval in *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128-129 [158 Cal.Rptr. 1, 599 P.2d 83], which pertains to the right of a nonsignatory

party in any litigation to recover its attorney fees. (*T&R Painting, supra*, 23 Cal.App.4th at p. 742.) The general contractor terminated the subcontract on the grounds the subcontractor's work was defective. The dispute was arbitrated. The subcontractor prevailed and the arbitrator awarded the subcontractor its attorney fees and costs as the prevailing party on the subcontract. (*Ibid.*) The subcontractor thereafter went to trial against the general contractor's surety to determine the surety's liability on a payment bond for the attorney fees the subcontractor incurred in prosecuting its claims. (*Ibid.*)

*T&R Painting* concurred in *Boliver*'s analysis and concluded the subcontractor "can recover from the surety the attorney fees provided for in its subcontract and ordered by the court, so long as the total recovery against the surety, including attorney fees, does not exceed the penal sum of the bond. [Citations.]" (*T&R Painting, supra*, 23 Cal.App.4th at p. 746.) In arriving at its ruling, *T&R Painting* emphasized that Civil Code section 2808 "flatly provides that a surety's liability is commensurate with the liability of its principal." (*T&R Painting, supra*, 23 Cal.App.4th at p. 746.)

■ *Royster Construction Co. v. Urban West Communities* (1995) 40 Cal.App.4th 1158 [47 Cal.Rptr.2d 684], which held attorney fees are not recoverable against a *mechanic's lien release bond*, is inapposite. (*Id.* at p. 1168.) The " 'black letter law' . . . bars recovery of attorney fees in mechanic's lien actions [citation] [and] became part of [the] [Civil Code] section 3143 [mechanic's lien] release bond." (*Royster Construction Co., supra*, at p. 1169.)[6] Therefore, the principal had no legal obligation to pay the subcontractor's attorney fees as part of the mechanic's lien claim. (*Ibid.*) Consequently, the surety on the mechanic's lien release bond likewise was not liable for attorney fees on the mechanic's lien claim. (*Ibid.*)

■ Here, all the elements set forth in *Boliver* and *T&R Painting* are present. There was a construction contract, providing for attorney fees to the prevailing party, and supported by a surety bond issued by a third party, but the bond does not specifically provide for the surety's liability for attorney fees. (*Boliver v. Surety Co., supra*, 72 Cal.App.3d at p. Supp. 32; *T&R Painting, supra*, 23 Cal.App.4th at p. 745.) Therefore, NTS may recover

---

defendant to recover contractual attorney fees, when the defendant is sued on a contract as if the defendant were a party to it.

[6]Although the statutory scheme originally provided for the recovery of attorney fees by the successful mechanics' lienholder, that provision was declared unconstitutional (*Builders' Supply Depot v. O'Connor* (1907) 150 Cal. 265, 268 [88 P. 982]) and no similar provision was subsequently enacted. (*Wilson's Heating & Air Conditioning v. Wells Fargo Bank* (1988) 202 Cal.App.3d 1326, 1330 [249 Cal.Rptr. 553].)

from the surety on the stop notice release bond the attorney fees provided for in its subcontract, provided the total recovery does not exceed the amount of the bond. (§ 996.470; *T&R Painting, supra,* 23 Cal.App.4th at p. 746.)

Accordingly, the trial court erred in granting UPIC's motion in limine to exclude evidence of the attorney fees that NTS has incurred.

    c.  *Surety's liability for statutory penalties.*

Business and Professions Code section 7108.5 requires a prime contractor to pay to "any subcontractor, not later than 10 days of receipt of each progress payment, unless otherwise agreed to in writing, the respective amounts allowed the contractor on account of the work performed by the subcontractors, to the extent of each subcontractor's interest therein." The statute provides for a "penalty, payable to the subcontractor, of 2 percent of the amount due per month for every month that payment is not made." (*Ibid.*) The issue presented is UPIC's liability on the stop notice release bond for such penalty.

As a general principle, " 'The rule is that rights and liabilities under a surety bond are to be determined from the language of the bond read in the light of applicable statutes. [Citations.]' [Citation.] 'If the surety makes the contract with the law before him, the law enters into and becomes a part of the agreement. [Citations.]' [Citation.] A surety may raise all defenses allowed to the principal and must only pay on the bond 'if the claimant establishes, without reference to the bond, a legal obligation on the part of the principal to pay. [Citation.]' [Citation.]" (*Royster Construction Co. v. Urban West Communities, supra,* 40 Cal.App.4th at pp. 1168-1169, italics deleted.)

■ In *Washington Internat. Ins. Co. v. Superior Court* (1998) 62 Cal.App.4th 981, 985 [73 Cal.Rptr.2d 282], a subcontractor brought an action against the surety on a public works payment bond to recover money the prime contractor did not pay to the subcontractor.[7] The subcontractor's complaint included a request for relief under Public Contract Code section 10262.5 which, like Business and Professions Code section 7108.5, imposes a 2 percent per month penalty for a prime contractor's failure to make timely payment to a subcontractor. The surety moved to strike the portion of the complaint that requested payment of the 2 percent monthly interest penalty.

---

[7] A payment bond is "a bond with good and sufficient sureties that is conditioned for the payment in full of the claims of all claimants . . . ." (Civ. Code, § 3096.)

The trial court denied the surety's motion and the payment bond surety filed a petition for writ of mandate. (*Washington Internat. Ins. Co., supra,* 62 Cal.App.4th at pp. 983-985.)

We held a public works payment bond, unlike a mechanic's lien, exists to secure payment to the claimant of the amount due from the principal, and the interest penalty is clearly a part of that claim. (*Washington Internat. Ins. Co. v. Superior Court, supra,* 62 Cal.App.4th at pp. 986-989.) We further held that requiring the surety to pay the statutory penalty does not violate public policy. (*Id.* at p. 989.) Insurance Code section 533 provides, in relevant part, "[a]n insurer is not liable for a loss caused by the wilful act of the insured" and it embodies the public policy against indemnity coverage for intentional torts. (*Washington Internat. Ins. Co., supra,* at p. 989.) However, a surety bond and a liability insurance policy are conceptually and legally distinct. (*Ibid.*) An insurer undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event, whereas a surety promises to answer for the debt, default, or miscarriage of another. (*Ibid.*) The surety relationship is a tripartite one, in which the third party (the obligee, or, here, the subcontractor), rather than the principal (here, the general contractor), is protected by the surety's promise to pay if the principal does not, in exchange for which promise the principal pays the premium for the bond. (*Ibid.*) While an insurer has no right of subrogation against its insured, a surety has every right to reimbursement from its principal. (*Ibid.*) "In other words, under a surety bond, the principal is *not* indemnified; the surety can sue the principal for any sums it must pay out to the obligee, and the public policy embodied in Insurance Code section 533 is in no way offended." (*Ibid.*)

The rationale of *Washington Internat. Ins. Co. v. Superior Court, supra,* 62 Cal.App.4th 981, in allowing a subcontractor to seek payment of a statutory interest penalty from the surety on a public works payment bond is equally applicable to NTS's claim for the statutory interest penalty against UPIC as the surety on the stop notice release bond. We conclude UPIC's liability on the stop notice release bond extends to any statutory penalty to which NTS may be entitled pursuant to Business and Professions Code section 7108.5, provided the total recovery does not exceed the amount of the bond. Accordingly, the trial court erred in granting UPIC's motion in limine to preclude NTS from presenting evidence with respect to its claim to the statutory interest penalty.

DISPOSITION

The order to show cause is discharged. The petition for writ of mandate is granted. Let a writ of mandate issue directing respondent superior court to:

vacate its order granting UPIC's motion in limine to preclude any reference to the prior trial and judgment against the general contractor, and to enter a new and different order merely precluding any reference to the verdict or judgment against the general contractor; and to vacate its order precluding any reference to NTS's attorney fees or to statutory interest penalties and to enter a new and different order denying that motion in limine.

NTS shall recover its costs in this proceeding. (Cal. Rules of Court, rule 56.4(a).)

Croskey, J., and Aldrich, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied July 31, 2002. Brown, J., did not participate therein.